THE STATE EX REL. HALL, APPELLEE, *v.* STATE EMPLOYMENT
RELATIONS BOARD, APPELLANT.
[Cite as *State ex rel. Hall v. State Emp. Relations Bd.,*
122 Ohio St.3d 528, 2009-Ohio-3603.]

*Mandamus — Appeal from judgment granting writ of mandamus to compel the*
*State Employment Relations Board to vacate dismissal of a charge —*
*Court of appeals' grant of writ reversed — Court of appeals could not*
*substitute its judgment for that of board.*

(No. 2009-0159 — Submitted July 14, 2009 — Decided July 29, 2009.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 90808,
2008-Ohio-6661.

_____

**Per Curiam.**

**{¶ 1}** This is an appeal from a judgment granting a writ of mandamus to compel appellant, State Employment Relations Board ("SERB"), to vacate its dismissal of an unfair-labor-practice charge, find that there is probable cause for the charge, and hold a hearing on the merits of the charge. Because the court of appeals erred in holding that SERB abused its discretion in dismissing the charge, we reverse the judgment of the court of appeals and deny the writ.

**Child-Abuse Call**

**{¶ 2}** Appellee, Barbara Hall, was employed as a social service worker by the Cuyahoga County Department of Children and Family Services ("county"). On January 8, 2004, Hall processed a KIDS hotline call from a healthcare worker reporting that the maternal aunt of a two-year-old child claimed that the child had been physically and sexually abused by the boyfriend of the child's mother. The healthcare employee noted that the aunt relayed that the child said that his

"bottom was hurting," that his mother's boyfriend was responsible for it, and that the child had exhibited bruises covering his body a couple weeks earlier. When Hall asked for the mother's name, there was a lapse of 17 seconds during which the healthcare worker looked it up and provided it to her.

{¶ 3} Hall then designated the call as a nonreferral, which meant that the allegations of child abuse would not be referred for investigation. Hall informed the healthcare worker that the matter would not be investigated because "she can't go on speculation, she don't have any proof." Under the county's policy, which Hall acknowledged receiving, all cases involving alleged physical and sexual abuse of children were required to be referred for investigation.

{¶ 4} A little over two weeks later, the child was admitted to a hospital and found to have a left subdural hematoma, left arm fracture, and bilateral hemorrhages – conditions that were consistent with shaken-baby syndrome.

**Discharge and Grievance**

{¶ 5} In March, the county held a predisciplinary conference. At the conference, Hall claimed that during the 17-second pause during the January hotline call, she was instructed by her supervisor to designate the child-abuse call as a nonreferral. The supervisor denied Hall's claim. Hall was placed on administrative leave with pay while the county investigated her actions in not referring the child-abuse allegations.

{¶ 6} The county found Hall guilty of neglect of duty and terminated her employment effective May 19, 2004. The county concluded that Hall had violated its guidelines of appropriate conduct by failing to properly assess and process the hotline call involving the child-abuse allegations.

{¶ 7} Two days later, Hall's union, the American Federation of State, County, and Municipal Employees, Ohio Council 8, Local 1746, AFL-CIO, appealed her termination to step 3 of the grievance procedure contained in the collective-bargaining agreement between the county and the union. The

agreement provides, "It is important that the employee complaints regarding unjust or discriminatory suspensions and/or discharge be handled promptly. Therefore, all such disciplinary action may be reviewed through the Grievance Procedure, beginning at Step 3." The local union president stated that she personally gave Hall a copy of the grievance shortly after it was filed.

### Further Actions on Grievance

{¶ 8} In June 2004, a step 3 grievance hearing was held during which Hall was represented by the local union president. At the union's request, the grievance was put on hold so that the union could obtain more information and the county's investigation into the child abuse could be completed. A couple of months later, the local union president met with the county investigator, who confirmed that the investigation had substantiated the child abuse. The union president advised the county to answer the grievance. The union president also discussed the investigation results with Hall and told her that she did not believe that the case would be successful if arbitrated.

{¶ 9} After not receiving a written response to the grievance by January 2005, the union president called the county's human resources director, who informed her that a response denying the grievance would be forthcoming. The union president believed that she had received the county's written step 3 response to the grievance and had given the file to the union's Ohio Council 8 staff to review for possible arbitration. During 2005, the union president told Hall that the grievance was being reviewed by Ohio Council 8 for possible arbitration and reminded her that it was a serious case that might not be appealed to arbitration.

{¶ 10} In December 2006, after the Ohio Council 8 president asked the local union president about Hall's grievance, the local union president discovered that the county had never issued a step 3 grievance response. The union then contacted the county, and by letter dated December 20, 2006, the county issued a

decision denying the grievance and concluding that Hall was terminated with just cause.

{¶ 11}  The union timely appealed the denial of the grievance to arbitration.  Upon reviewing the matter, however, Ohio Council 8 determined that the grievance lacked merit because (1) Hall did not follow proper procedures to assign the case for investigation, (2) Hall was told of possible physical and sexual abuse of the child, which was sufficient to refer the matter for investigation under the county's policies, (3) it was Hall's responsibility to assess the hotline call, and a supervisor's override of that decision was required to be written, and (4) there was no override in the case.  By letter dated April 26, 2007, the union advised Hill that based on its review, the grievance did not have sufficient merit to warrant continuing the appeal to arbitration and that the union would withdraw the grievance.

## Unfair-Labor-Practice Charge

{¶ 12}  Hall filed with SERB an unfair-labor-practice charge against the union.  She claimed that the union violated its duty to fairly represent her under R.C. 4117.11(B)(6).  More specifically, Hall asserted that the union (1) never provided her with a copy of the grievance submitted by the union on her behalf and failed to keep her updated, (2) never submitted a grievance regarding her initial suspension from employment, and (3) delayed for three years before informing her that the grievance would not be appealed to arbitration.

{¶ 13}  A labor-relations specialist investigated the matter for SERB and requested that Hall and the union provide responses to certain requests for information.  The labor-relations specialist requested that Hall provide all documentation supporting her position, and the specialist requested that the union provide any witness statements supporting its position.  After the parties submitted their responses, the labor-relations specialist submitted a memorandum concluding that "[b]ased on the merits of [Hall's] grievance, it appears [the union]

acted reasonably when it determined not to proceed any further on the grievance. The investigation does not show that [the union's] actions were arbitrary, discriminatory, or in bad faith." The labor-relations specialist recommended that SERB dismiss the charge with prejudice for lack of probable cause. SERB agreed and dismissed Hall's unfair-labor-practice charge with prejudice.

### Mandamus Case

{¶ 14} Hall then filed a complaint in the Court of Appeals for Cuyahoga County for a writ of mandamus to compel SERB to reinstate her unfair-labor-practice charge, issue a complaint against the union, and hold a hearing on the matter. Hall also sought a writ of mandamus to compel SERB to provide her with a copy of its investigative file on her charge. The latter claim was rendered moot when SERB released a copy of its investigatory file to Hall.

{¶ 15} The parties filed motions for summary judgment. Hall submitted affidavits of three former county employees with her motion. None of these affidavits had been submitted to SERB during its investigation of Hall's unfair-labor-practice charge. In her motion, Hall claimed that the union failed to prosecute her grievance over a three-year period and thus failed to timely submit her grievance to step 3 of the grievance procedure in the collective-bargaining agreement after requesting that the county place her grievance on hold in 2004.

{¶ 16} The court of appeals granted a writ of mandamus to compel SERB to vacate its dismissal of Hall's unfair-labor-practice charge, find probable cause for the charge, and hold a hearing on the merits. The court of appeals concluded that SERB abused its discretion in dismissing Hall's charge.

{¶ 17} This cause is now before the court on SERB's appeal as of right. Ohio Council 8 and the Ohio Education Association have submitted amicus curiae briefs in support of SERB.

### Mandamus: Standard of Review

{¶ 18} "R.C. 4117.12(B) requires SERB to issue a complaint and conduct a hearing on an unfair-labor-practice charge if it has probable cause for believing that a violation occurred." *State ex rel. Hamilton Cty. Bd. of Commrs. v. State Emp. Relations Bd.*, 102 Ohio St.3d 344, 2004-Ohio-3122, 810 N.E.2d 949, ¶ 16. "Because these SERB determinations are not reviewable by direct appeal, mandamus is available to remedy an abuse of discretion by SERB in dismissing unfair-labor-practice charges." *State ex rel. Stewart v. State Emp. Relations Bd.*, 108 Ohio St.3d 203, 2006-Ohio-661, 842 N.E.2d 505, ¶ 10. "An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

### Probable Cause and R.C. 4117.11(B)(6)

{¶ 19} We must determine whether the court of appeals erred in holding that SERB abused its discretion when it dismissed Hall's unfair-labor-practice charge for lack of probable cause. SERB is required to issue a complaint and conduct a hearing on an unfair-labor-practice charge if, after an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 38. This determination is generally factual, and courts cannot substitute their judgment for that of SERB if there is conflicting evidence. Id. at ¶ 41.

{¶ 20} Hall claimed that the union violated R.C. 4117.11(B)(6), which specifies that "[i]t is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to * * * [f]ail to fairly represent all public employees in a bargaining unit." In determining whether SERB abused its discretion when it held that Hall did not establish probable cause that the union violated its duty to fairly represent her, we "must defer to SERB's interpretation of R.C. Chapter 4117." *Grady*, 78 Ohio St.3d at 183-184, 677 N.E.2d 343; *State*

*Emp. Relations Bd. v. Miami Univ.* (1994), 71 Ohio St.3d 351, 353, 643 N.E.2d 1113.

{¶ 21} SERB has applied the following standard for determining whether a union has violated its duty of fair representation:

{¶ 22} " 'If there are no apparent factors that show legitimate reason for a union's approach to an issue, the Board will not automatically assume arbitrariness. Rather, we will look to evidence of improper motive: bad faith or discriminatory intent. An element of intent must be present; it may be evinced by discrimination based upon an irrelevant and invidious consideration, or it may be indicated by hostile action or malicious dishonesty i.e., bad faith. In the absence of such intent, if there is no rational basis for the action, arbitrariness will be found only if the conduct is so egregious as to be beyond the bounds of honest mistake or misjudgment.' " *In re Wheeland* (June 6, 1995), Franklin App. No. 94APE10-1424, 1995 WL 347896, *4, quoting *In re AFSCME, Local 2312* (Oct. 16, 1989), SERB No. 89-029, at 3-203 to 3-204.

{¶ 23} In *Vencl v. Internatl. Union of Operating Engineers, Local 18* (C.A.6, 1998), 137 F.3d 420, 426, the United States Court of Appeals for the Sixth Circuit interpreted the National Labor Relations Act's comparable language imposing a duty of fair representation on unions:

{¶ 24} "A union breaches that duty by acting arbitrarily. *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1209 (6th Cir.1981) ('*Ruzicka II*'). A union acts arbitrarily by failing to take a basic and required step. *Id.* at 1211. Timely filing is both basic and required. In *Ruzicka II*, the union failed to file a timely grievance. The court noted that 'absent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation.' *Id.* (citation omitted). As an example of a viable excuse, the court held that the union's untimely filing could be excused if a prior

course of dealing reasonably indicated that the employer would accept a late filing."

**{¶ 25}** SERB subsequently adopted the *Vencl* holding in its fair-representation analysis:

**{¶ 26}** "We hereby adopt this analysis into our process of determining whether a union's conduct is 'arbitrary' and the process outlined within it. There are certain basic and required steps a union must take when fulfilling its duty of fair representation; the specific steps will vary depending upon the nature of the representation being provided; a non-exhaustive list of these representation functions includes filing a grievance, processing a grievance, deciding whether to take a grievance to arbitration, participating in labor-management committee meetings, negotiating with an employer regarding wages, hours, terms and conditions of employment, and conducting a contract ratification meeting. Failure to take a basic and required step while performing any of these representation functions creates a rebuttable presumption of arbitrariness. When looking at this issue, we must look at all of the circumstances involved, including, but not limited to, what steps were basic and required, how severe the mistake or misjudgment was, what the consequences of the union's acts were, and what the union's reasons for its acts were.

**{¶ 27}** "The initial burden is on the Charging Party and the Complainant to show that the union acted arbitrarily, and therefore did not fairly represent the Charging Party, by showing that the union failed to take a basic and required step." *In re OCSEA/AFSCME Local 11* (July 22, 1998), SERB No. 98-010, at 3-58; see also *Dist. 1199, The Health Care & Soc. Servs. Union, SEIU, AFL-CIO v. State Emp. Relations Bd.*, Franklin App. No. 02AP-391, 2003-Ohio-3436, 2003 WL 21499655, ¶ 37-38.

**{¶ 28}** With these standards governing our analysis of SERB's dismissal of Hall's charge, we next determine whether SERB abused its discretion.

8

### Application of Standards to Evidence Before SERB

{¶ 29} The court of appeals held that SERB abused its discretion in dismissing Hall's unfair-labor-practice charge alleging a violation of the union's duty of fair representation under R.C. 4117.11(B)(6). As the court of appeals noted, because the parties agreed that neither bad faith nor discrimination applied, the dispositive issue was whether there was probable cause before SERB that the union's actions relating to Hall's grievance were arbitrary. The court of appeals found that probable cause existed because (1) the union "failed to take the basic and required step of notifying the Federal Mediation and Conciliation Service," (2) the union "lost track of the status of the grievance during 2005 and did not promptly pursue it," (3) the labor-relations specialist excused the union's actions based on an improper standard, and (4) the labor-relations specialist "did not provide each party an equal opportunity to present its case." 2008-Ohio-6661 at ¶ 30. For the following reasons, however, these reasons lack merit.

### Notification of the Federal Mediation and Conciliation Service

{¶ 30} Step 5 of the grievance procedure in the collective-bargaining agreement between the county and the union provides that if a grievance is not satisfactorily settled at step 3 of the process, "the Union may, within thirty (30) days after the receipt of the Step 3 answer, submit the issue to arbitration. The Union shall notify the Federal Mediation and Conciliation Service ('FMCS') of its intent to arbitrate."

{¶ 31} Significantly, in her filings supporting the unfair-labor-practice charge before SERB and in her filings in her court of appeals mandamus action, Hall never asserted that the union failed to comply with step 5 of the grievance procedure because it did not notify FMCS. Consequently, there was no reason for the union to submit evidence or argument on that issue. See *Dist. 1199*, 2003-Ohio-3436, 2003 WL 21499655, at ¶ 31 ("Because that is the only issue set forth

in [the charging party's] complaint, it arguably is the only issue SERB should have decided").

**{¶ 32}** Nor is it apparent that notifying FMCS was a basic and required step. Step 4 of the grievance procedure specifies that "[o]nce a grievance has been appealed to arbitration, it will be referred to mediation unless either party determines not to mediate a particular grievance." Therefore, it was unnecessary for the union to notify FMCS to secure an arbitrator under step 5 as long as a decision about mediation had not been made.

**{¶ 33}** The court of appeals thus erred in relying on this unargued and erroneous ground to grant the writ. The union acted reasonably in timely submitting an appeal of the county's step 3 decision denying the grievance while the union proceeded to review whether to continue processing the grievance through arbitration.

### Failure to Promptly Process Grievance

**{¶ 34}** The local union president lost track of Hall's grievance from January 2005, when the county advised her that it would deny the grievance, until December 2006, when she discovered that she had not received a step 3 response from the county. But the duty to make a prompt, written step 3 determination under the collective-bargaining agreement was on the employer – the county. There was no duty on the union to do so. In fact, the local union president had already contacted the county and requested that it make its step 3 decision on the grievance. This case is thus distinguishable from the SERB case cited by the court of appeals in which a union failed to advance a grievance within the collective-bargaining agreement's deadline to do so and concealed that fact from the employee. Cf. *In re OCSEA, AFSCME, Local 11* (May 21, 1999), SERB No. 99-099. Here, the union's actions did not cause any grievance-related deadline to expire.

{¶ 35} The court of appeals thus erred in relying on this basis to grant the writ.

### Improper Standard

{¶ 36} Nor did the labor-relations specialist apply an improper standard to excuse the union's actions. As noted previously, the union did not fail to take any basic and required step under the collective-bargaining agreement in its processing of Hall's grievance. The labor-relations specialist did not err in determining that the union's delay in following up on receipt of the county's step 3 grievance response was due to an honest mistake rather than egregious conduct.

### Denial of Equal Opportunity to Present Evidence

{¶ 37} As Hall appears to admit on appeal, the court of appeals should not have relied on the affidavits attached to her summary-judgment motion, which were not before SERB, to determine the merits of her mandamus claim. "It is axiomatic that SERB could not abuse its discretion based on evidence that was not properly before the board when it made its decision. Consequently, the review of a SERB decision is generally limited to the facts as they existed at the time SERB made its decision." *Portage Lakes Edn. Assn.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 55; *Hamilton Cty. Bd. of Commrs.*, 102 Ohio St.3d 344, 2004-Ohio-3122, 810 N.E.2d 949, ¶ 21.

{¶ 38} Moreover, the labor-relations specialist had instructed Hall to provide "all documentation" supporting her charge.

{¶ 39} Therefore, the court of appeals erred in relying on this ground to grant the writ.

### Conclusion

{¶ 40} Therefore, the court of appeals erred in relying on its specified reasons to grant the requested extraordinary relief in mandamus. Hall failed to establish that SERB acted unreasonably, arbitrarily, or unconscionably in dismissing her unfair-labor-practice charge. For Hall's claims that the union

SUPREME COURT OF OHIO

failed to fairly represent her because it did not grieve her suspension, did not provide her with a copy of the grievance concerning her removal from county employment, and delayed processing of her grievance to step 3, the evidence before SERB was conflicting, and the court of appeals could not substitute its judgment for that of SERB. *Portage Lakes Edn. Assn.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 41. Based on these reasons, the court of appeals erred in holding that SERB abused its discretion and granting the writ. We reverse the judgment of the court of appeals and deny the writ.

Judgment reversed

and writ denied.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Gerald R. Walton & Associates, Gerald R. Walton, and John J. Schneider, for appellee.

Richard Cordray, Attorney General, Benjamin J. Mizer, Solicitor General, Kimberly A. Olson, Deputy Solicitor, and Anne Light Hoke, Assistant Attorney General, for appellant.

R. Sean Grayson, General Counsel, and Kimm A. Massengill-Bernadin, urging reversal for amicus curiae Ohio Council 8, AFSCME, AFL-CIO.

Linda K. Fiely, General Counsel, urging reversal for amicus curiae Ohio Education Association.

_____