STATE ex rel. FULLER, Appellee,

v.

STATE EMPLOYMENT RELATIONS BOARD, Appellant.

[Cite as *State ex rel. Fuller v. State Emp. Relations Bd.*, 193 Ohio App.3d 272, 2011-Ohio-1599.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–630.

Decided March 31, 2011.

274

Schuster & Simmons Co., L.P.A., and Nancy C. Schuster, for appellee.

Michael DeWine, Attorney General, and Anne Light Hoke, Assistant Attorney General, for appellant.

Hunter, Carnahan, Shoub & Byard, Michael J. Hunter, and Cathrine J. Harshman, for amicus curiae SEIU District 1199.

Kimm A. Massengill–Bernardin, for amicus curiae Ohio Council 8, AFSCME, AFL–CIO.

Linda K. Fiely, for amicus curiae Ohio Education Association.

KLATT, Judge.

{¶ 1} Respondent-appellant, the State Employment Relations Board ("SERB"), appeals from a judgment of the Franklin County Court of Common Pleas that granted a writ of mandamus ordering SERB to issue a complaint and conduct a hearing concerning the unfair labor practice charge of relator-appellee, Tommy Fuller, against his union, the Service Employees International Union, AFL–CIO, Local 47 ("SEIU"). For the following reasons, we affirm.

{¶ 2} Fuller worked as a senior fireman for the Cuyahoga Metropolitan Housing Authority ("CMHA"). On January 3, 2003, two CMHA police officers observed Fuller enter a CMHA housing unit used by CMHA maintenance personnel. The police officers knocked on the door of the unit, but Fuller did not respond, because he was using an upstairs bathroom. When Fuller exited the unit, the CMHA police officers confronted him. The confrontation ended with the CMHA police officers forcing Fuller to the ground, macing him, placing him in handcuffs, and arresting him. In the course of subduing Fuller, the CMHA police officers discovered a knife on or near him.

{¶ 3} After conducting a predisciplinary hearing regarding the incident, CMHA terminated Fuller's employment. CMHA concluded that termination was appropriate because Fuller violated work rules that prohibited (1) action or conduct unbecoming a CMHA employee, (2) fighting on the job or on CMHA property, and (3) possession, concealment, display, or use of any weapon on workplace premises.

{¶ 4} SEIU represented a bargaining unit that included Fuller. SEIU filed a grievance contesting Fuller's termination in accordance with the terms of the collective-bargaining agreement between CMHA and SEIU. CMHA denied the grievance in a letter dated July 17, 2003. Pursuant to Section 16.1 of the collective-bargaining agreement, the July 17, 2003 letter constituted CMHA's answer under Step 2 of the grievance procedure. Section 16.1 provided that "[i]f the grievance is not settled at Step 2, the Union may, within twenty (20) calendar days after the answer under Step 2, unless extended by mutual written agreement, request arbitration by written notice to CMHA."

{¶ 5} As a result of the January 3, 2003 incident, Fuller was indicted in the Cuyahoga County Court of Common Pleas on two counts of felonious assault on a peace officer. At some point after CMHA denied the grievance, CMHA and SEIU decided to halt the grievance process until the criminal proceedings against Fuller concluded. To that end, CMHA and SEIU entered into two consecutive written agreements that held the dispute over Fuller's termination in abeyance and set a specific date on which the abeyance would end. When the criminal charges remained pending on the date designated in the second agreement,

CMHA and SEIU entered into an agreement holding their dispute "in abeyance until criminal proceedings have concluded and the courts have rendered a decision."

{¶ 6} A jury found Fuller not guilty of both counts of felonious assault on May 27, 2004. On June 3, 2004, the Cuyahoga County Court of Common Pleas issued a journal entry memorializing Fuller's acquittal.

{¶ 7} After his acquittal, Fuller informed SEIU that the criminal case had ended, but the record contains conflicting evidence regarding when Fuller first made contact with SEIU. According to Fuller, within two weeks of receiving the jury's not-guilty verdict, he went to SEIU's offices to speak with Norma Harrison, the SEIU employee who had been handling his grievance. When the receptionist told Fuller that Harrison was unavailable, Fuller left her a message that his criminal case was over and that he had been acquitted. Harrison, however, ·did not respond to the message. Fuller claims that subsequent messages that he left with the receptionist also went unanswered. Frustrated with the lack of response, Fuller asked his attorney, Nancy C. Schuster, for help with dealing with the union sometime in late August or early September 2004.

{¶ 8} In contrast to Fuller's recollection that he first contacted SEIU two weeks after his acquittal, Schuster's December 6, 2004 letter to SEIU states, "Mr. Fuller's initial call to you [occurred] approximately four weeks" after the jury returned its not-guilty verdict. A subsequent letter from Schuster indicates that Fuller left several messages for SEIU representatives "in late August/early September." SEIU later cited Schuster's December 28, 2004 letter to support its assertion to SERB that Fuller "waited at least three months before contacting anyone from SEIU about the disposition of the charges."

{¶ 9} In any event, by early October 2004, Schuster's staff established contact with Tori McReynolds, an administrative organizer who had assumed responsibility for Fuller's grievance upon Harrison's retirement. A member of Schuster's staff informed McReynolds of Fuller's acquittal and asked McReynolds to resume processing Fuller's grievance. In reply, McReynolds stated that she would look for Fuller's file. For unknown reasons, McReynolds did not take any action on Fuller's behalf until December 21, 2004, when she sent a letter to CMHA notifying it of SEIU's intent to proceed to arbitration.

{¶ 10} At the arbitration hearing, CMHA argued that the arbitrator lacked authority to adjudicate the matter because SEIU had failed to timely request arbitration. CMHA asserted that the agreed-to abeyance expired on May 27, 2004—the date the jury rendered its not-guilty verdict. Relying on Section 16.1 of the collective-bargaining agreement, CMHA contended that SEIU had had an obligation to submit to CMHA a written notice of its intent to arbitrate within 20 days of May 27, 2004. Because SEIU waited until December 21, 2004, to supply

the required notice, CMHA argued that SEIU had lost the contractual right to arbitrate the matter of Fuller's termination.

{¶ 11} In response, SEIU argued that by assenting to the abeyance of the grievance process, CMHA agreed to dispense with the 20–day deadline. The abeyance agreement did not incorporate the 20–day time limit contained in Section 16.1, so SEIU concluded that CMHA had waived that contractual provision. Alternatively, SEIU argued that the 20–day period did not commence until December 21, 2004, which SEIU asserted was the date that McReynolds learned of Fuller's acquittal.

{¶ 12} In his decision, the arbitrator agreed with CMHA. He found that the abeyance agreement did not waive the 20–day deadline, but instead merely suspended its application "until criminal proceedings * * * concluded and the courts * * * rendered a decision." Thus, once the specified events occurred, time began to run on the 20–day window during which SEIU had to submit written notice to CMHA of its intent to arbitrate. The arbitrator concluded that SEIU's December 21, 2004 notice was "blatantly untimely," and therefore, he dismissed the grievance for SEIU's failure to adhere to the time line contained in Section 16.1 of the collective-bargaining agreement.

{¶ 13} On June 2, 2006, Fuller filed an unfair-labor-practice charge against SEIU before SERB. Fuller asserted that SEIU failed to fairly represent him, and thus violated R.C. 4117.11(B)(6), when it did not timely notify CMHA of its intent to arbitrate the matter of his termination.

{¶ 14} As required by R.C. 4117.12(B), SERB directed Kennedy, a labor-relations specialist, to investigate Fuller's charge. In response to Kennedy's queries, Fuller and SEIU separately summarized the events that resulted in Fuller's charge. Each party also submitted relevant documents. In its defense to the violation charged, SEIU posited, "Mr. Fuller's delay in contacting the union following [his] acquittal is the factor that initially caused the reinstituting of the grievance to be untimely."

{¶ 15} After completing his investigation, Kennedy prepared a memorandum for SERB in which he recommended that SERB find probable cause to believe that an unfair labor practice had occurred, authorize the issuance of a complaint, and refer the matter to hearing to determine whether SEIU had violated R.C. 4117.11(B)(6). In reaching this conclusion, Kennedy cited SERB decisions that hold that a union acts arbitrarily, and thus breaches its duty of fair representation, when it fails to take a basic and required step without justification or viable excuse. Kennedy also recognized SERB's determination that the duty of fair representation imposes on the union the duty to act in the best interest of the grievant, and on the grievant, the responsibility to not hinder the union and to assist when so requested. Kennedy stated, therefore:

The question is whether SEIU failed to take a basic and required step * * * or did Mr. Fuller fail to assist SEIU * * * by not notifying SEIU immediately after the acquittal. SEIU never argued it had asked Mr. Fuller to contact it once his criminal case concluded. None of the information provided indicates SEIU asked Mr. Fuller to help in any way. It was SEIU and CMHA who agreed to hold the grievance in abeyance, not Mr. Fuller. It would appear that the responsibility to track the criminal case remained with SEIU.

{¶ 16} SERB, however, rejected its investigator's recommendation and dismissed Fuller's charge. In its decision, SERB reasoned:

The information upon which the Charged Party is alleged to have failed to act—the acquittal—was clearly within the Charging Party's possession on May 27, 2004. * * * The failure to act lies principally with the Charging Party, not the Charged Party; to find probable cause potentially rewards the Charging Party for his inaction.

{¶ 17} Dissatisfied with SERB's decision, Fuller filed a motion for reconsideration. Fuller attached to his motion an affidavit that explained the timing of his efforts to inform SEIU of his acquittal. SERB denied Fuller's motion.

{¶ 18} On July 2, 2006, Fuller filed a complaint in the trial court seeking a writ of mandamus ordering SERB to find probable cause that an unfair labor practice had occurred, issue a complaint, and conduct a hearing on the merits of his charge. Fuller alleged that SERB's dismissal of his charge amounted to an abuse of discretion, and as such, it warranted correction through such a writ.

{¶ 19} Both Fuller and SERB filed merit briefs, and SERB submitted to the trial court a certified copy of the records received and produced by SERB in relation to Fuller's charge. After considering these materials, the trial court found that the record before SERB contained no evidence that Fuller had participated or joined in the abeyance agreement between SEIU and CMHA. Due to the lack of Fuller's involvement, the trial court held, "SEIU was responsible for abiding by the terms of the agreement—including timely pursuing Fuller's grievance after the criminal proceedings had ended and the attendant responsibility of keeping track of the status of those criminal proceedings." The trial court thus concluded that SERB had abused its discretion in basing its finding of no probable cause on the ground that Fuller bore the responsibility to inform SEIU of his acquittal. Because the trial court concluded that SERB had abused its discretion, it granted Fuller the writ that he sought.

{¶ 20} Seeking to convince the trial court that its decision was wrong, SERB filed a motion for reconsideration. The trial court denied this motion. In doing so, the trial court emphasized its earlier holding that Fuller did not owe SEIU a duty to inform it that the criminal proceedings against him had ended. Instead,

according to the trial court, it was incumbent on SEIU to monitor those criminal proceedings and timely notify CMHA of its intent to arbitrate once the proceedings concluded. The trial court reduced its decisions to judgment on June 4, 2010.

{¶ 21} SERB now appeals from that judgment and assigns the following error:

The court of common pleas erred in granting a mandamus and ordering the State Employment Relations Board (SERB) to find probable cause that the union had committed an unfair labor practice in the processing of the grievance of the relator-appellee (Fuller) and ordering SERB to hold a hearing on the matter.

{¶ 22} An employee organization commits an unfair labor practice if it "[f]ail[s] to fairly represent all public employees in a bargaining unit." R.C. 4117.11(B)(6). "Whoever violates section 4117.11 of the Revised Code is guilty of an unfair labor practice remediable by the state employment relations board as specified in" R.C. 4117.12. R.C. 4117.12(A). Any public employee in a bargaining unit may file a charge with SERB alleging that an employee organization committed an unfair labor practice by failing to fairly represent the employee. R.C. 4117.12(B). In accordance with the process detailed in R.C. 4117.12(B), SERB must issue a complaint and conduct a hearing on that charge if following an investigation, it has probable cause for believing that a violation of R.C. 4117.11(B)(6) occurred. *State ex rel. Hall v. State Emp. Relations Bd.*, 122 Ohio St.3d 528, 2009-Ohio-3603, 912 N.E.2d 1120, ¶ 18; *State ex rel. Hamilton Cty. Bd. of Commrs. v. State Emp. Relations Bd.*, 102 Ohio St.3d 344, 2004-Ohio-3122, 810 N.E.2d 949, ¶ 16.

{¶ 23} Under R.C. 4117.12(B), "[t]he pertinent issue is whether *probable cause exists* to believe that an unfair labor practice has occurred, not whether an unfair labor practice *actually* occurred." (Emphasis sic.) *State ex rel. Serv. Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 181, 689 N.E.2d 962. In determining whether probable cause exists, SERB must consider whether its investigation has uncovered a reasonable ground to believe that an unfair labor practice has occurred. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emps. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 37–38. This determination primarily turns upon the facts of each case, and it requires consideration of evidence that supports the allegations of the charge as well as evidence that rebuts the charge or substantiates a defense to the violation charged. Id. at ¶ 39–40.

{¶ 24} Probable cause determinations by SERB under R.C. 4117.12(B) are not reviewable by direct appeal. *Hamilton Cty. Bd. of Commrs.* at ¶ 16; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183,

677 N.E.2d 343. Instead, a party must bring an action in mandamus to obtain judicial review of a SERB order dismissing an unfair-labor-practice charge for lack of probable cause. *Hall*, 122 Ohio St.3d 528, 2009-Ohio-3603, 912 N.E. 1120, at ¶ 18; *State ex rel. Stewart v. State Emp. Relations Bd.*, 108 Ohio St.3d 203, 2006-Ohio-661, 842 N.E.2d 505, ¶ 10. A court will issue a writ of mandamus to correct an abuse of discretion by SERB in dismissing the unfair-labor-practice charge. *Serv. Emps. Internatl. Union, Dist. 925* at 187, 689 N.E.2d 962. SERB abuses its discretion when it renders an unreasonable, arbitrary, or unconscionable decision. *Portage Lakes Edn. Assn., OEA/NEA*, at ¶ 35. When reviewing a SERB decision under the abuse-of-discretion standard, a court cannot substitute its judgment for that of SERB on factual questions if the record contains conflicting evidence. *Hall* at ¶ 19.

{¶ 25} Courts must defer to SERB's interpretation of R.C. Chapter 4117. *Hall* at ¶ 20; *Grady* at 183–184, 677 N.E.2d 343. When reviewing a dismissal of a charge for lack of probable cause, courts apply the appropriate legal standards adopted by SERB to the evidence adduced before SERB. *Hall* at ¶ 20, 28. SERB adjudges whether probable cause exists under the legal standards it has developed in determining the merits of complaints after a hearing. See, e.g., *In re Romine v. Ohio Council 8, AFSCME, Local 2544, AFL–CIO* (Oct. 19, 2007), SERB No. 07–ULP–04–0203. Accordingly, in the case at bar, we rely on SERB precedent for the standard for determining whether SERB abused its discretion in finding no probable cause that SEIU violated its duty of fair representation.

{¶ 26} "When an unfair labor practice is charged because a union has allegedly violated its duty of fair representation, [SERB] will look to see if the union's actions are arbitrary, discriminatory, or in bad faith." *In re OS-CEA/AFSCME, Local 11* (July 22, 1998), SERB No. 98–010 ("*In re OS-CEA/AFSCME*"). If the union's actions fall into one of the three categories, SERB will find a breach of the duty of fair representation. Id. See also *Vaca v. Sipes* (1967), 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (a breach of the duty of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith").

{¶ 27} To determine whether a union's conduct is arbitrary, SERB applies the analysis employed in *Vencl v. Internatl. Union of Operating Engineers, Local 18* (C.A.6, 1998) 137 F.3d 420. *In re OCSEA/AFSCME.* There, the United States Court of Appeals for the Sixth Circuit held, " 'Absent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation.' " *Vencl* at 426, quoting *Ruzicka v. Gen. Motors Corp.* (C.A.6, 1981), 649 F.2d 1207, 1211. In accordance with that holding, the

Sixth Circuit concluded that a union had breached its duty of fair representation when it failed to timely request arbitration of a grievance because its business representative had gone on vacation. Id. Expanding upon *Vencl,* SERB held:

> There are certain basic and required steps a union must take when fulfilling its duty of fair representation; the specific steps will vary depending upon the nature of the representation being provided; a non-exhaustive list of these representation functions includes filing a grievance, processing a grievance, deciding whether to take a grievance to arbitration, participating in labor-management committee meetings, negotiating with an employer regarding wages, hours, terms and conditions of employment, and conducting a contract ratification meeting. Failure to take a basic and required step while performing any of these representation functions creates a rebuttable presumption of arbitrariness.

*In re OCSEA/AFSCME.*

{¶ 28} In establishing probable cause that an unfair labor practice has occurred, the charging party bears the initial burden of showing that the union acted arbitrarily by failing to take a basic and required step. Id.; *In re Romine.* Once the charging party meets that burden, a presumption arises that the union acted arbitrarily. *In re OCSEA/AFSCME.* The union can rebut this presumption with evidence of a justification or viable excuse for its action or inaction. Id.; *In re Romine* (SERB applied the burden-shifting analysis to find that there was no probable cause to believe that the union acted arbitrarily, because the union presented a legitimate justification or viable excuse for its failure to take a basic and required step). In examining the justification or viable excuse, SERB considers the union's reasons for its action or inaction, as well as the consequences of the action or inaction. *In re AFSCME, Ohio Council 8 and Local 1768* (June 24, 1999), SERB No. 99–013.

{¶ 29} SERB has applied the above analysis to multiple cases since adopting it in *In re OCSEA/AFSCME.* See *In re OCSEA/AFSCME, Local 11* (Nov. 30, 2007), SERB No. 2007–004; *In re Dist. 1199, Serv. Emps. Internatl. Union, AFL–CIO* (Mar. 1, 2001), SERB No. 2001–001, reversed, *District 1199, Health Care & Social Servs. Union, SEIU, AFL–CIO v. State Emps. Relations Bd.,* 10th Dist. No. 02AP–391, 2003-Ohio-3436, 2003 WL 21499655 (recognizing that SERB had adopted the *Vencl* analysis and disagreeing with SERB's application of that analysis in the particular case); *In re AFSCME, Ohio Council 8 and Local 1768; In re OSCEA/AFSCME, Local 11* (May 21, 1999), SERB No. 99–009. Moreover, the Supreme Court of Ohio has recognized this analysis as the standard for determining whether a union acted arbitrarily and, thus, violated R.C. 4117.11(B)(6). *Hall,* 122 Ohio St.3d 528, 2009-Ohio-3603, 912 N.E.2d 1120, at ¶ 23–27. Here, although Fuller alleged that SEIU violated R.C. 4117.11(B)(6)

through failing to timely request arbitration, SERB did not conduct the required analysis. Had SERB done so, it could only have concluded that there was probable cause to believe that SEIU did not take a basic and required step.

{¶ 30} As SERB held in *In re OSCEA/AFSCME,* processing a grievance constitutes a basic and required step. Moreover, in *In re OCSEA/AFSCME, Local 11* (Nov. 30, 2007), SERB No. 2007–004, and *In re OCSEA/AFSCME, Local 11* (May 21, 1999), SERB No. 99–009, SERB concluded that the union failed to take a basic and required step when it did not timely advance a member's grievance to arbitration. Because that exact conduct is at issue here, we must conclude that SEIU failed to take a basic and required step.

{¶ 31} The next part of our analysis of SERB's probable-cause determination requires examination of SEIU's justification or excuse for its failure to timely request arbitration. *In re OCSEA/AFSCME.* In response to the SERB investigator's questions, SEIU placed the blame for the lateness of the arbitration notice on Fuller, claiming that his failure to contact SEIU until August 2004 prevented the union from meeting the 20–day deadline that ran from the date of the May 27, 2004 acquittal. SERB found that SEIU's position had merit because "the duty of fair representation encompass[es] not only the union's duty to act in the best interest of the grievant, but also that the grievant not hinder this duty and assist when so requested." *In re OSCEA, Local 11/Bur. of Motor Vehicles* (Aug. 25, 1994), SERB No. 94–015, affirmed, *Owens v. Ohio State Emps. Relations Bd.* (June 6, 1995), Franklin C.P. No. 94CVF–09–6278, 1995 WL 534241. By concluding that "the failure to act lies principally with" Fuller, SERB implicitly attributed to Fuller the duty to timely inform SEIU of his acquittal. By declining to reward Fuller for his inaction, SERB visited on Fuller the adverse consequences for his failure to fulfill his duty. Construing this conclusion in the context of the appropriate analysis, we find that SERB deemed SEIU's inaction justifiable (and thus, not arbitrary) because Fuller was the party ultimately at fault for the union's inaction.

{¶ 32} According to the precedent that SERB relied upon to reach its ruling, a union's inaction is not arbitrary if a member refuses to cooperate with the union as it processes a grievance on the member's behalf. Id. See also *In re Ohio Council 8, AFSCME, Local 100* (Aug. 9, 2004), SERB No. 2004–005. Grievants who "hinder" the union or fail to "assist when so requested" "may later find themselves unsuccessful with charging the union with violating the duty of fair representation." *In re OSCEA, Local 11/Bur. of Motor Vehicles.* Thus, to review SERB's probable-cause ruling, we must consider the evidence in the record to determine whether Fuller hindered SEIU's ability to timely notify CMHA of its intent to arbitrate or refused to assist SEIU when so requested. If any such evidence exists, then the grant of a writ of mandamus is not appropri-

ate. *Hall*, 122 Ohio St.3d 528, 2009-Ohio-3603, 912 N.E.2d 1120, at ¶ 19 ("[C]ourts cannot substitute their judgment for that of SERB if there is conflicting evidence").

{¶ 33} First, the record before SERB is devoid of any evidence that Fuller hindered, deterred, or otherwise impeded SEIU from learning that the criminal proceedings against him had concluded. Such information is publicly available, making it virtually impossible for Fuller to prevent SEIU from discovering it. Second, the record is devoid of any evidence that SEIU requested that Fuller keep it informed of the outcome of the criminal charges against him. On appeal, SERB argues that the multiple messages that Fuller left with SEIU regarding his acquittal demonstrates that he knew that SEIU was depending on him to inform it of his acquittal. SERB then reasons that Fuller's knowledge that SEIU was relying on him could only have resulted from SEIU's request that Fuller keep it apprised of the status of his criminal case. SERB's decision, however, does not indicate that it made these inferences, and we cannot assume that SERB interpreted the evidence in that manner. Moreover, if SERB had determined that SEIU had requested Fuller's assistance through the reasoning advanced on appeal, SERB would have had to stack inference upon inference—a legally impermissible method of arriving at a factual finding. *McDougall v. Glenn Cartage Co.* (1959), 169 Ohio St. 522, 525, 9 O.O.2d 12, 160 N.E.2d 266 ("an inference can not be predicated upon a fact the existence of which rests on another inference"); *McKenzie v. FSF Beacon Hill Assocs., L.L.C.*, 10th Dist. No. 05AP–1194, 2006-Ohio-6894, 2006 WL 3775857, ¶ 14 ("A finder of fact is prohibited from drawing an inference solely and entirely from another inference").

{¶ 34} Given the lack of evidence that Fuller hindered or failed to assist SEIU when so requested, we conclude that SERB abused its discretion when it found Fuller ultimately culpable for the lateness of the arbitration notice. Because there is no evidence that Fuller refused to cooperate with SEIU, SERB lacked any basis for finding that Fuller bore the responsibility for SEIU's failure to take a basic and required step. In other words, the evidence presented does not establish that Fuller's delay in informing SEIU of his acquittal justified SEIU's failure to timely provide CMHA notice of its intent to arbitrate. Absent a justification for SEIU's failure to take a basic and required step, the presumption that SEIU acted arbitrarily remains in place. Accordingly, we conclude that the trial court correctly determined that SERB abused its discretion in finding no probable cause that SEIU committed an unfair labor practice.

{¶ 35} SERB, however, argues that SEIU had another justification for its failure to timely request arbitration: SEIU reasonably interpreted the abeyance agreement as waiving the 20–day time limit contained in the collective-bargaining

agreement, so SEIU did not realize that it had failed to take a basic and required step until it was too late to rectify its mistake. Although this is an arguably plausible justification, SEIU did not assert this justification during SERB's investigation. More importantly, neither SERB nor the trial court considered or relied on this justification as a ground for finding no probable cause. We decline to consider the argument for the first time on appeal.

{¶ 36} Based on the foregoing, we conclude that the trial court did not err in issuing a writ of mandamus ordering SERB to find probable cause that an unfair labor practice occurred, issue a complaint, and conduct a hearing on the merits of Fuller's charge. In so concluding, we stress that this decision presents no limitation on SERB's ability to render factual findings and legal conclusions after a hearing on the merits. SERB retains the authority, granted under R.C. 4117.12(B)(3), to dismiss the complaint if upon the preponderance of the evidence taken, it believes that SEIU did not engage in an unfair labor practice. Nevertheless, on the basis of relevant SERB precedent and the record thus far developed before SERB, we overrule SERB's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BROWN and SADLER, JJ., concur.