[Cite as *State ex rel. Howard v. State Emp. Relations Bd.*, 2016-Ohio-4765.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Roger Howard, | : | |
| Relator, | : | |
| v. | : | No. 15AP-220 |
| [State Employee Relations Board] et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 30, 2016

**On brief:** *Daniel H. Klos,* for relator.

**On brief:** *Michael DeWine*, Attorney General, *Lisa M. Critser* and *Jonathan R. Khouri,* for respondent State Employment Relations Board.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Roger Howard, commenced this action in mandamus seeking an order compelling respondent, State Employment Relations Board ("SERB"), to find that the Franklin County Sheriff's Office ("FCSO") violated R.C. 4117.11(A)(8) when it interpreted the collective bargaining agreement ("CBA") to prohibit relator from applying for a particular position. Relator also sought an order compelling SERB to find that relator's collective bargaining unit, Fraternal Order of Police, C-Lodge No. 9 ("FOP"), violated R.C. 4117.11(B)(6) for not advancing relator's grievance to arbitration.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings

of fact and conclusions of law, which is appended hereto. The magistrate found that SERB did not abuse its discretion when it dismissed the unfair labor practice ("ULP") charges for lack of probable cause because the FCSO and FOP ultimately agreed that section 9.5 of the CBA barred relator from applying for the sergeant position at issue. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to both the magistrate's findings of fact and conclusions of law.

## Objections to the Magistrate's Findings of Fact

{¶ 4} Relator has objected to 14 of the magistrate's findings of fact. These factual objections consist of approximately 18 pages of arguments that focus solely on the relevance of the factual findings and/or the interpretation and application of these findings to the issue of law presented. It is impossible to discern from relator's arguments what part of the factual findings, if any, are inaccurate or why they are not supported by the record. We conclude from our review of the record that the findings of fact challenged by relator are supported by the record. For these reasons, we overrule all of relator's objections to the magistrate's findings of fact.

## Objections to the Magistrate's Conclusions of Law

{¶ 5} The essence of relator's objections to the magistrate's conclusions of law appear to be that the magistrate allegedly erred in finding no abuse of discretion by SERB because, according to relator, SERB should have found probable cause for an ULP based on the plain language of the CBA. We disagree.

{¶ 6} Relator concedes that the issuance of a finding of probable cause by SERB is discretionary. Contrary to relator's assertion, the CBA does not expressly address the factual scenario presented by relator's grievance. Therefore, the CBA had to be interpreted to resolve the issues raised by relator's grievance. Given that the record reflects evidence that the FOP and the FCSO concluded that relator's grievance was unsupportable based upon their independent interpretations of the CBA, we agree with the magistrate that SERB did not abuse its discretion in finding the absence of probable cause for an ULP. Therefore, we agree with the magistrate that relator has not

demonstrated that SERB abused its discretion and we overrule relator's objections to the magistrate's conclusions of law.

{¶ 7}    Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

TYACK and BROWN, JJ., concur.

————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Roger Howard, | : | |
| Relator, | : | |
| v. | : | No. 15AP-220 |
| [State Employee Relations Board], et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on January 29, 2016

*Daniel H. Klos,* for relator.

*Michael DeWine*, Attorney General, *Lisa M. Critser* and *Jonathan R. Khouri,* for respondent State Employment Relations Board.

*Ron O'B rien*, Prosecuting Attorney, and *Scott J. Gaugler,* for respondent Franklin County Sheriff Zach Scott.

IN MANDAMUS

{¶ 8}   Relator, Roger Howard, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, State Employment Relations Board ("SERB") to find that the Franklin County Sheriff's Office ("FCSO") violated R.C. 4117.11(A)(8) when interpreting the collective bargaining agreement ("CBA") in a manner which prohibited relator from applying for a job, and finding that his collective bargaining unit, Fraternal Order of Police, C-Lodge No. 9 ("FOP"), violated R.C. 4117.11(B)(6) when FOP did not advance relator's grievance to arbitration.

<u>Findings of Fact</u>:

{¶ 9}  1. Relator is employed by the FCSO and the FOP is the board-certified representative for full-time, sworn, uniform deputies employed by FCSO.

{¶ 10}  2. FOP and FCSO are parties to a CBA effective January 1, 2013 through December 31, 2015, which includes a binding grievance-arbitration process.

{¶ 11}  3. In February 2014, relator was working as a sergeant assigned to the corrections division.

{¶ 12}  4. On February 11, 2014, relator bid upon a position as a corporal in the Patrol Division.  In order to take this job, relator was willing to be demoted to the rank of corporal because he desired a position in the Patrol Division.

{¶ 13}  5. Section 9.5(E) of the CBA provides:

> Any member who is not in the same rank as identified in the notice of the posted vacancy shall not be selected to fill the vacancy, except that a member in a higher rank than the posted vacancy shall be eligible to be selected for the posted vacancy if he agrees to a demotion to the rank of the posted vacancy, if selected.

{¶ 14}  6. In a letter dated February 11, 2014 from Chief Michael Flynn of the FCSO, relator was notified that he had been selected to fill the corporal vacancy for which he applied.  That letter provides:

> You have been selected for the 2 Corporals-Patrol-1st shift via the job posting. However, your transfer is being delayed. Your transfer will be no later than April 6, 2014.
>
> Your voluntary demotion to Corporal will occur when your transfer takes effect. Until that time you will remain in the rank of Sergeant.

{¶ 15}  7. On February 20, 2014, the FCSO and the FOP entered into a Memorandum of Understanding ("MOU") because FCSO had sergeant positions that remained vacant and needed to be filled.  The MOU provides, in pertinent part:

> [One] Members who have between one year and two years seniority in the rank of Corporal shall be permitted to participate in the promotional examination for Sergeant, which is being conducted in March 2014. This group of members shall be placed on a separate eligibility list that may be utilized only upon exhaustion of the list of members

with two or more years seniority in the rank of Corporal that is established in accordance with Article 10. Members shall be selected for promotion from this second eligibility list in accordance with the terms of Article 10.

[Two] In the event that the promotional lists established under paragraph 1 are both exhausted, and the Sheriff wishes to provisionally promote additional Sergeants in accordance with Section 10.3(C), the Sheriff may do so prior to January 1, 2015 by selecting from all Corporals who have more than one year seniority in the rank of Corporal.

[Three] No other provisions of Article 10 are affected by this memorandum of Understanding.

[Four] This Memorandum of Understanding shall not serve as precedent with respect to future promotions or the filling of any future vacancies not expressly addressed herein.

{¶ 16} 8. In a letter dated March 10, 2014, Chief Michael Flynn informed relator that his transfer to corporal in the patrol division would be effective Monday, March 24, 2014.

{¶ 17} 9. On March 12, 2014, while awaiting his transfer, relator applied for a sergeant position in the patrol division. Relator did not get the sergeant position.

{¶ 18} 10. In a letter dated March 17, 2014, relator was informed by Chief Flynn that his transfer to corporal in the patrol division was effective March 21, 2014.

{¶ 19} 11. On March 18, 2014, relator filed a grievance which was assigned grievance number 14-09. Relator explained his grievance as follows:

On March 12th, 2014 The Grievant became aware that he had been passed over for a job posting to 2nd Shift Patrol Sgt. The Grievant believes this to be in violation of the collective bargaining agreement between The Franklin County Sheriffs Office and The Fraternal Order of Police, Capital City Lodge #9.

{¶ 20} 12. Chief Deputy Geoff Stobart held a Step 2 grievance meeting on March 19, 2014. Chief Stobart concluded that relator's grievance should be denied based on the following findings:

Sgt. Roger Howard believed he was entitled to the position and claims Sgt. Downing was not entitled to the position.

> Sgt. Howard had accepted a reduction in rank to post to a vacant Corporal's Position. Howard was awarded this position and was being held in his previous position pending the promotions of the next round of Sergeants.
>
> A MOU was drafted and signed by both the FOP and Management. This MOU allowed the Office to promote Corporals who had more than one year of seniority. This is exactly what the Office did.
>
> The Office worked with the FOP and agreed to offer promotions working off the established list of all those who had signed up to take the promotional exam. Those eligible were placed on a list in order of seniority, and offered promotions.
>
> Every single person on the list was offered a Sergeant's position. Downing was the last eligible person on [the] list established in accordance with the MOU. He was offered and accepted.
>
> It should be further noted that even after promoting or offering every person on this list promotions, the Office is still short Sergeants.
>
> The Office clearly worked with the FOP to establish this MOU. The FOP was involved in all discussions about how we intended to manage this process up to and including showing them the list we intended work from.
>
> The office strongly feels the process used was consistent with the spirit of the MOU, we clearly worked with the FOP during the course of this process, and the solution agreed on was the right and fair thing to do for both the FOP and the Office.
>
> Sgt. Downing was promoted consistent with the clearly established agreement, and is therefore entitled to the vacancy is [sic] question.

{¶ 21} 13. A Step 3 grievance meeting with Chief Deputy Jim Gilbert occurred on March 26, 2014. Chief Deputy Gilbert also recommended that the grievance be denied, stating:

> There are currently openings in the rank of Sergeant within the Sheriff's Office.

I reviewed the information provided by the FOP as well as asked the grievant questions regarding this matter. The grievant was asked "So you took the Sergeant's test two weeks ago and what is your intention from here regarding a promotion to that rank?" The grievant stated he "probably" wouldn't take a promotion to Sergeant if offered by the Sheriff's Office. He further stated that he thought taking the self-demotion was best for his career because the Patrol Bureau is where he has always wanted to work.

In reviewing the MOU, reviewing previous documents regarding promotional matters and hearing from the grievant[,] I believe that the process was consistent with the MOU. The FOP along with management worked together during this process. The grievant appears to be upset with the "stars not aligning" as he would have liked. He knew in taking a self-demotion that at some point other Sergeant positions within the Office would be coming open however, he chose to take a Corporal assignment under no pressure from the FOP or the Sheriff's Office. In fact to further point out his "intentions" for future promotional opportunities he stated he "probably" wouldn't take a promotion to the rank of Sergeant that is going to be offered to him within the next several weeks.

{¶ 22} 14. In a letter dated March 28, 2014 and addressed to relator, Sheriff Zach Scott informed him that he agreed with Deputy Chief Gilbert's Step 3 response and, as such, relator's grievance was denied.

{¶ 23} 15. In a letter dated April 10, 2014, Jason Pappas, as president of the FOP, notified Sheriff Scott of FOP's intent to proceed to arbitration on relator's grievance, stating:

Pursuant to our current collective bargaining agreement the lodge is notifying you of our intent to proceed to arbitration on the attached grievance #14-9.

I will initiate the notification to the Federal Mediation and Conciliation Service of our need for a panel of arbitrators.

{¶ 24} 16. By way of e-mails contained in the stipulation of evidence, it is apparent that both FOP and FCSO thoroughly reviewed relator's grievance. For example, in

response to an e-mail from relator's counsel dated April 16, 2014, an attorney for the FOP responded:

> Thank you for the letter. I have discussed this case with my client again this morning; and, utilizing the information contained in your letter, the Lodge will continue to conduct its review of this grievance. This review already has been extensive and has included a review of job bids by self-demoted members over a period of approximately 20 years. As of this date, the Lodge has not found any other situation in which a self-demoted member was permitted to bid upon and receive an assignment in his previous (higher) rank while "on hold." If Roger has any contrary examples of that circumstance, please share them with me as soon as possible.
>
> As of this point in time, the Lodge believes that, for purposes of job bids under Article 9, a member who has accepted a bid assignment in a lower rank is no longer eligible to bid upon an assignment in their previous (higher) rank - regardless of whether they were placed on a temporary "hold" in the higher rank. This position is based upon the Lodge's understanding of the parties' intent with respect to Section 9.5E. of the collective bargaining agreement. *However,* the Lodge will consider the information provided in your letter, it will accept any additional information that you or your client wish to offer, and it will conduct additional research regarding prior cases.
>
> I understand that Roger has had extensive discussions regarding his grievance with Lodge representatives, and your letter provides additional significant detail regarding Roger's position with respect to that grievance. Since he has retained you as his counsel, we will not be conducting a conference call with Roger today. However, I will convey to you the Lodge's final position on Roger's grievance -- i.e., whether it will arbitrate that grievance -- on or before April 30, 2014. Also, as noted above, please feel free to share any additional information that you or Roger wish the Lodge to consider; and, if you believe that a conversation between you and me would be helpful, fee free to suggest a time, and we can schedule a telephone call.

(Emphasis sic.)

{¶ 25} 17. A second e-mail from relator's counsel that same day provides:

This is to follow up on our conversation regarding the parties' interpretation of Section 9.5E. of the FOP collective bargaining agreement. In particular, I understand that the FCSO and the FOP have the same interpretation of Section 9.5E. In particular, that section of the contract permits a member to "self-demote" to a lower rank by bidding on a posted vacancy in a lower rank and being selected for that assignment. Once the member has been selected for the assignment in the lower rank (i.e., is notified of and does not reject the lower rank assignment), the member is thereafter precluded from receiving an assignment in a higher rank through the Article 9 bid process (unless he is subsequently re-promoted to the higher rank).

It also is my understanding that the FCSO believes that the "hold" placed upon Roger Howard, which temporarily delayed his transfer to his new Corporal assignment following his self-demotion, did not restore him to the rank of Sergeant for the purpose of additional job bids under Article 9 of the contract. If my understanding of the FCSO's position is accurate, the FOP does not dispute that position and would not interpret the contract differently.

Please let me know if the foregoing accurately reflects the position of the FCSO and its interpretation of both Section 9.5E. and the effect of the temporary hold that was placed on Cpl. Howard's transfer to his new assignment.

{¶ 26} 18.  Thereafter, in an e-mail dated April 30, 2014, relator's counsel withdrew the request for arbitration, stating:

This is to notify you, as Roger Howard's attorney, that the FOP (Capital City Lodge No. 9) will not arbitrate Corporal Howard's grievance, #14-09, and it will notify the Sheriff's Office that the request for arbitrations being withdrawn.

This decision is based upon the rationale set forth in my email of April 17, appended below. Both prior and subsequent to my email, the Lodge was unable to find any instances where a member agreed to "self demote" by accepting a bid to a lower ranked assignment, but as then permitted to receive a bid to an assignment in his/her previous (higher) rank - regardless of whether that member had been placed on a temporary "hold" in his/her former rank. The Lodge also has not received any examples of that situation from Roger.

More importantly, the Lodge was able to confirm that its understanding of the intent of Section 9.5 E. of the collective bargaining agreement (as discussed in my previous email) is shared by the Sheriff's Office. As such, insofar as both parties to the contract share the same understanding regarding the meaning of that Section as it applies to Corporal Howard's situation, there would be no basis to challenge the denial of Roger's grievance (and no ability to win an arbitration).

{¶ 27} 19. In June 2014, relator was removed from his position as a corporal in the patrol division and was reassigned to the corrections division after receiving negative performance evaluations.

{¶ 28} 20. On June 10, 2014, relator filed an unfair labor practice ("ULP") charge against FCSO alleging a violation of R.C. 4117.11(A)(8) (Case No. 2014-ULP-06-0085). In his statement of facts, relator stated:

On March 12, 2014, I was denied a Sergeant position that I posted for and was the most qualified for pursuant to the Collective Bargaining Agreement ("CBA"). The position was given to someone who should not have even been considered for the position due to the fact that a qualified person (myself) posted (pursuant to an existing Memorandum of Understanding dated February __, 2014). The Union was induced by the employer to take the position that the "spirit" of the MOU had not been violated, even though the letter of the MOU clearly was violated. The Union and the employer have, in the past, allowed posting for positions while other transfers were "on hold," as was the case with me, pursuant to § 9.2 of the CBA, which states that a transfer does not take effect until the employee actually assumes their new duties. I filed a timely grievance on the issue. On April 30, 2014, the Union informed me that it was withdrawing my grievance over my objections because it was "in agreement" with the employer.

{¶ 29} 21. Relator points to Section 9.2 of the CBA, which provides:

Section 9.2 Transfer and Vacancy Defined.

A transfer is any change in a member's regular assignment, except days off. A vacancy is defined as a newly created position to be filled, an opening which results from a transfer, except a temporary transfer; or a position to be filled resulting from termination, resignations, demotions and/or promotions.

{¶ 30} 22. That same day, relator filed an unfair labor practice ("ULP") charge against FOP alleging a violation of R.C. 4117.11(B)(6) (Case No. 2014-ULP-0086). Relator stated:

> On March 12, 2014, I was denied a Sergeant position that I posted for and was the most qualified for pursuant to the Collective Bargaining Agreement ("CBA"). The position was given to someone who should not have even been considered for the position due to the fact that a qualified person (myself) posted (pursuant to an existing Memorandum of Understanding dated February __, 2014). The Union was induced by the employer to take the position that the "spirit" of the MOU had not been violated, even though the letter of the MOU clearly was violated. The Union and the employer have, in the past, allowed posting for positions while other transfers were "on hold," as was the case with me, pursuant to § 9.2 of the CBA, which states that a transfer does not take effect until the employee actually assumes their new duties. I filed a timely grievance on the issue. On April 30, 2014, the Union informed me that it was withdrawing my grievance over my objections because it was "in agreement" with the employer.

{¶ 31} 23. On June 16, 2014, Holly M. Levine, a labor relationship specialist with SERB, addressed letters to counsel requesting responses to certain questions and inviting the parties to consider mediation as a preliminary step to resolving the dispute before an initial finding regarding the ULP charges.

{¶ 32} 24. Relator, FCSO, and FOP submitted information relating to SERB's request.

{¶ 33} 25. Holly Levine issued separate investigator's memoranda, dated July 28, 2014, concerning relator's ULP charges against the FCSO as well as against FOP to SERB. In her Findings Upon Examination related to the ULP charge against FCSO, Levine set forth the position of both relator and FCSO, stating:

> Charging Party asserts while his transfer was on a temporary hold, on March 12, 2014, he submitted a bid on a newly posted vacant Sergeant position in the Patrol Division. Charging Party asserts he was wrongfully denied the position.

On March 18, 2014, Charging Party filed a grievance alleging he was passed over for the job vacancy of Sergeant. The grievance was denied.

The County explained that despite Charging Party's interpretation of the contract, it is their belief that self demotion clause in Article 9.5(E) of the contract makes the demotion effective immediately upon selection acceptance of the position in a lower rank. Even though Charging Party was still in his previous assignment as a Sergeant, with his transfer on hold, he was in effect Acting Sergeant, in that he was performing Sergeant's duties and pay, but his rank had been converted to Corporal when he was selected to fill and accepted the Patrol Corporal's assignment.

{¶ 34} Levine also set forth relator's ULP charge against the FOP as well as the FOP's response, stating:

On March 18, 2014, Charging Party filed a grievance alleging he was passed over for the job vacancy of Sergeant. The grievance was denied.

Charging Party asserts FOP failed to fairly represent him when it refused to take his grievance to arbitration.

FOP maintains that it spent a considerable amount of time discussing Charging Party's grievance with him. FOP contends that it was unable to find any evidence that the contract had previously been interpreted in the way that Charging Party would like it to be interpreted. Specifically, FOP explained that Charging Party utilized a contractual provision to voluntarily self-demote in order to bid upon and receive an assignment in a lower rank. After the demotion became effective, he attempted to "un do" the demotion by bidding upon another vacant assignment in his previous rank. The contract does not permit him to re-promote himself in that fashion.

{¶ 35} 26. Levine recommended that SERB dismiss the charges with prejudice against both FCSO and FOP for lack of probable cause to believe that either party committed a ULP. With regard to FCSO, Levin explained:

Charging Party alleges the County violated Ohio Revised Code § 4117.11(A)(8) by causing or attempting to cause the Union to violate its duty of fair representation. Specifically, Charging Party contends that the County's interpretation of

the contract led the Union to unfairly represent him by refusing to take his grievance to arbitration.

Contrary to the allegations raised by Charging Party, the County's actions involve contractual interpretation and do not rise to the level of a statutory violation. Charging Party did not provide sufficient information to support the (A)(8) allegation.

{¶ 36} 27.  With regard to FOP, Levine explained:

In the case of *In re OCSEA/AFSCME Local 11,* SERB 98-010 (7-22-98), SERB modified *In re AFSCME, Local 2312,* SERB 89-029 (10-16-89) holding that arbitrariness, discrimination and bad faith are distinct components of the same duty and should be reviewed on an equal basis. The definition of "arbitrary" conduct was modified to include a failure to take a basic and required step without justification or viable *excuse*. SERB also held that a union's failure to state the reasons behind its actions, which was not previously called for may result in an unrebutted presumption of arbitrariness. *In re Ohio Civil Service Employees Assn/AFSCME, Local 11,* SERB 93-019 (12-20-93), *aff'd In re Wheeland v. SERB,* 1994 SERB 4-86 (CP, Franklin, 9-2-94), *aff'd In re Wheeland,* 1995 SERB 4-19 (10th Dist. Ct. App, Franklin, 6-6-95).

When an unfair labor practice charge is filed because a union has allegedly violated its duty of fair representation, SERB will look to see if the union's actions are arbitrary, discriminatory, or in bad faith. If SERB finds any of these components, there is a breach of the duty. The Complainant has the burden of proving that the union did not fairly represent its bargaining-unit members. As to the component of arbitrariness, when the Complainant meets its burden of proof, a breach of the duty of fair representation will be found if the union cannot rebut the findings by providing justification or viable excuse for its conduct; if the justification or excuse constitutes simple negligence, we will find independent that the conduct is not arbitrary.

The investigation reveals that FOP's actions were not arbitrary, discriminatory or in bad faith. In fact, the FOP put forth a concerted effort to explain the contractual provision, in question, to Charging Party and the reasons for denying the grievance.

(Emphasis sic.)

{¶ 37} 28. On August 15, 2014, SERB dismissed relator's ULP charge against the FCSO, stating:

> Pursuant to Ohio Revised Code § 4117.12, the State Employment Relations Board conducted an investigation of this charge. The investigation revealed no probable cause existed to believe Charged Parties violated Ohio Revised Code § 4117.11. Information gathered during the investigation revealed that contrary to the allegations raised by the Charging Party, the Charged Parties' actions involve contractual interpretation and do not rise to the level of a statutory violation. Charging Party did not provide sufficient information to support the (A)(8) allegation. Accordingly, the charge is dismissed with prejudice for lack of probable cause to believe the statute has been violated.

{¶ 38} 29. On August 15, 2014, SERB also dismissed relator's ULP charge against the FOP, stating:

> Pursuant to Ohio Revised Code § 4117.12, the State Employment Relations Board conducted an investigation of this charge. The investigation revealed no probable cause existed to believe Charged Parties violated Ohio Revised Code § 4117.11. Information gathered during the investigation revealed that contrary to the allegations raised by the Charging Party, the Charged Parties' actions were not arbitrary, discriminatory or in bad faith. In fact, Charged Party put forth a concerted effort to explain the contractual provision in question to the Charging Party and the reasons for denying the grievance. Accordingly, the charge is dismissed with prejudice for lack of probable cause to believe the statute has been violated.

{¶ 39} 30. Thereafter, relator filed this mandamus action asking this court to compel SERB to find probable cause to believe his ULPs have been committed, issue complaints, and conduct hearings on the ULP charges against both FCSO and FOP.

Conclusions of Law:

{¶ 40} Relator asserts that SERB erred in dismissing his ULP charges and that he is entitled to a writ of mandamus to compel SERB to issue complaints and conduct hearings on his charges. Before addressing relator's assertion, we must determine the

appropriate standards for reviewing SERB's decisions finding no probable cause that ULP charges have occurred.

{¶ 41} R.C. 4117.12(B) requires SERB to issue a complaint and conduct a hearing on a ULP charge if it has probable cause for believing that a violation has occurred:

> When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. *If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge.*

(Emphasis added.)

{¶ 42} Probable cause determinations by SERB under R.C. 4117.12(B) are not reviewable by direct appeal. *Ohio Assoc. of Public Emps., Chapter 643 v. Dayton City School Dist. Bd. of Edn.,* 59 Ohio St.3d 159 (1991). Instead, in the absence of an adequate remedy in the ordinary course of law, an action in mandamus is the appropriate remedy to obtain judicial review of orders by SERB dismissing ULP charges for lack of probable cause. *State ex rel. Service Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.,* 81 Ohio St.3d 173 (1998), syllabus. A writ of mandamus will issue to correct an abuse of discretion by SERB in dismissing ULP charges. *State ex rel. Leigh v. State Emp. Relations Bd.,* 76 Ohio St.3d 143 (1996). An abuse of discretion means an unreasonable, arbitrary, or unconscionable decision. *State ex rel. Elsass v. Shelby Cty. Bd. of Commissioners,* 92 Ohio St.3d 529, a court addressing a petition for mandamus will not substitute its judgment for that of SERB if there is conflicting evidence on the contested issue. *State ex rel. Portage Lakes Edn. Assn. v. State Emp. Relations Bd.,* 95 Ohio St.3d 533 (2002).

{¶ 43} Chapter R.C. 4117 does not define the term "probable cause." That term has been defined by the Supreme Court of Ohio in *Portage Lakes:*

> The Ohio State Employment Relations Board must issue a complaint and conduct a hearing on an unfair labor practice charge if, following an investigation, it has a reasonable ground to believe that an unfair labor practice has occurred.

*Id.* at 541.

{¶ 44} In *Portage Lakes,* the Supreme Court of Ohio analogized the role of SERB in determining whether there was probable cause to that of a public prosecutor investigating a complaint of criminal activity.  In both cases, "the decision not to prosecute is discretionary, and not generally subject to judicial review."  *Ohio Assoc. of Public Emps.*  "The issue of probable cause in criminal proceedings is essentially one of fact." *See, e.g., State v. Tibbetts,* 92 Ohio St.3d 146, 153 (2001).

{¶ 45} In his ULP charges, relator alleged that FCSO violated R.C. 4117.11(A)(8) and FOP violated R.C. 4117.11(B)(6).  The substance of his ULPs stems from his assertion that he should have been given the sergeant position for which he applied after he had applied for and was given the corporal position.  Relator argues that FCSO and FOP together took the exact opposite position with regards to applications than they had in the past and discussed the factual scenarios involving two other employees.  Respondents asserted that the factual situations were not similar.  Ultimately, SERB determined that relator had failed to present sufficient information to support his allegations and dismissed his complaints.

{¶ 46} Relator argued that FCSO violated R.C. 4117.11(A)(8)(B), which provides:

> It is an unfair labor practice for a public employer, its agents,
> or representatives to:
>
> * * *
>
> Cause or attempt to cause an employee organization, its
> agents, or representatives to violate division (B) of this
> section.
>
> Relator also alleged that FOP violated R.C. 4117.11(B)(6), which provides:
>
> It is an unfair labor practice for an employee organization, its
> agents, or representatives, permanent total disability public
> employees to:
>
> * * *
>
> Fail to fairly represent all public employees in a bargaining
> unit.

{¶ 47} The essence of relator's argument is that his employer (FCSO) and his union (FOP) conspired together to justify his not being given the sergeant's position to which he

believed he was rightfully entitled. In order to prove a violation under R.C. 4117.11(B)(6), relator must establish that FOP's conduct was arbitrary, discriminatory, or in bad faith

{¶ 48} In *State ex rel. Hall v. State Emp. Relations Bd.,* 122 Ohio St.3d 528 (2009), the Supreme Court of Ohio explained SERB's standard for determining whether a union has violated its duty of fair representation:

> If there are no apparent factors that show legitimate reason for a union's approach to an issue, the Board will not automatically assume arbitrariness. Rather, it will look to evidence of improper motive: bad faith or discriminatory intent. An element of intent must be present; it may be evinced by discrimination based upon an irrelevant and invidious consideration, or it may be indicated by hostile action or malicious dishonesty i.e., bad faith. In the absence of such intent, if there is no rational basis for the action, arbitrariness will be found only if the conduct is so egregious as to be beyond the bounds of honest mistake or misjudgment
>
> * * *
>
> The initial burden is on a charging party and a complainant to show that the union acted arbitrarily, and therefore did not fairly represent the charging party, by showing that the union failed to take a basic and required step.

*Id.* at 533-34.

{¶ 49} In the investigator's memoranda to the board, the investigator concluded that relator's issue involved how FCSO and FOP interpreted the contractual provisions at issue. SERB determined that relator did not meet his burden of proving his allegations against either FCSO or FOP.

{¶ 50} In arguing to the contrary, relator continues to assert that he presented evidence that two employees similarly situated to him were treated in the manner he believes he should have been treated. However, FOP explained that the situations of both employees to whom relator directed FOP's attention were not similarly situated because section 9.5 of the CBA was not involved. Neither of those two employees had self-demoted by bidding on and accepting an assignment to a lower rank.

{¶ 51} The reality is, after considering the issue, both FCSO and FOP concluded that relator's situation was essentially one of first impression and further that they agreed

with the manner in which FCSO had interpreted the CBA. This does not constitute bad faith or discriminatory intent. Further, relator's grievances were heard and denied. FOP represented relator through his Step 3 grievance and beyond. It cannot be said that the FOP failed to take steps to represent relator's interest. The fact that FOP and FCSO ultimately agreed on the manner in which the CBA was interpreted is not evidence of bad faith. Based upon the facts as developed and explained in the investigator's memorandum, the fact that the FCSO and FOP ultimately agreed on the interpretation of the CBA provided a rational basis for the FOP to refrain from pursuing arbitration.

{¶ 52} The scenario presented by relator contrasts with the scenario presented by both FCSO and FOP. As such, there was conflicting evidence before SERB. Following the Supreme Court of Ohio's admonitions in *Hall* and *Portage Lakes,* this court should not substitute its judgment for that of the administrative board and, finding that SERB could have reasonably concluded that there was no probable cause to believe that either FCSO or FOP violated the provisions of R.C. 4117.11(A)(8), and (B)(6), relator has not demonstrated that he is entitled to a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).