[Cite as *State ex rel. McClair v. State Emp. Relations Bd.*, 2018-Ohio-326.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio, ex rel. Annette McClair | Court of Appeals No. L-17-1061 |
| Appellant | Trial Court No. CI0201603920 |
| v. | |
| State Employment Relations Board | **DECISION AND JUDGMENT** |
| Appellee | Decided:  January 26, 2018 |

* * * * *

Thomas A. Sobecki, for appellant.

Mike DeWine, Ohio Attorney General, and Lori J. Friedman,
Assistant Attorney General, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Annette McClair, appeals from the February 27, 2017 nunc pro tunc judgment of the Lucas County Court of Common Pleas dismissing McClair's complaint for a writ of mandamus compelling appellee, State Employment Relations Board (hereinafter "SERB"), to reinstate her unfair labor claim, find unfair labor

practices occurred, and proceed to setting the complaints for hearing. Because we find the trial court did not abuse its discretion, we affirm.

{¶ 2} McClair's unfair labor charges concerned a five-day suspension without pay imposed in 2016 upon McClair by her employer, Toledo Public Schools (hereinafter "TPS"), for several infractions. The first infraction occurred on December 12, 2015, when McClair arrived at her post 15 minutes late but signed in as having arrived on time, leaving her post without signing out or notifying a dispatcher, and working until 4:30 p.m. but signing out as having left at 4:00 p.m. While McClair was away from her post, her immediate supervisor, Acting Lieutenant Nancy Thompson, who is also the president of McClair's union, Ohio Council 8, AFSCME, AFL-CIO, Local 272 (hereinafter "Union"), observed McClair buying gas for her car and donuts for the other officers.

{¶ 3} Thompson reported this matter to her supervisor, William Weyandt, Director of the Department of Public Safety. TPS Chief Human Resource Officer notified McClair by a January 4, 2016 letter, received by McClair on January 6, 2016, that a hearing would be held on January 25, 2016, regarding the charges of falsification of overtime; theft of time; leaving the worksite during assigned hours; violation of the collective bargaining agreement (hereinafter "CBA"); violation of the Fair Labor Standards Act; repeated late arrivals; failure to perform job duties and responsibilities; gross insubordination; and other just and reasonable causes. The letter did not notify McClair of her actions which were the basis for these allegations.

2.

**{¶ 4}** While the first charge was pending, a second infraction occurred on January 9, 2016, when McClair was scheduled to work beginning at 4:00 p.m., but she did not arrive until 7:15 p.m. The final infraction occurred on January 13, 2016, when McClair was scheduled to attend training beginning at 7:45 a.m., but she did not arrive until 8:07 a.m. A second letter dated January 20, 2016, was sent to McClair adding the additional charges arising from these additional infractions and notifying McClair of her actions which were the basis of the final infraction.

**{¶ 5}** The SERB hearing investigator found, based on a letter to SERB from the Union's attorney, that McClair met with a Union representative for five hours on January 20 and 21, 2016, to review her case prior to the hearing and she did not deny the charges. The Union also asserted McClair had presented the representative with a stack of documents just prior to the hearing. Because the representative did not have time to review the documents (which appeared to merely detail the circumstances of her absences), the representative advised McClair he did not want to present the documents to the hearing officer because she had admitted to the infractions. The Union asserted that McClair agreed to not introduce the documents. Instead, the representative focused on asserting that the proposed discipline sought by TPS, a 10-day suspension and demotion, was too harsh. McClair did not contradict these assertions other than to assert she submitted documents to support her case.

**{¶ 6}** Following the January 25, 2016 hearing, the hearing officer recommended a five-day suspension without pay and a letter of reprimand to be placed in McClair's

3.

personnel file. While McClair had been disciplined for a similar infraction in 2009, the hearing officer found there was no evidentiary documentation to substantiate that McClair exhibited an ongoing pattern of unauthorized absences from, or untimeliness to, her work site in recent years. While the hearing officer did not fault McClair for leaving her worksite on December 12, 2015, and making a brief stop on her return, the hearing officer found McClair had falsified her actual time on duty that day on her time card.

{¶ 7} The hearing officer's recommendation was delivered to McClair on February 19, 2016, along with the notification that TPS would uphold the hearing officer's recommendation. On February 23, 2016, McClair requested arbitration and submitted an arbitration brief on March 2, 2016. In her arbitration brief, McClair outlined the facts relating to her infraction charges. She never asserted her CBA disciplinary rights were violated by the expedited disciplinary action or that TPS violated Article 17.02(C) of the CBA and that the Union should file a grievance for the contract violations. The Union asserts it considered the request on March 7, 2016, and denied the request on March 8, 2016.

{¶ 8} On April 4, 2016, McClair filed two unfair labor practice charges with SERB against the Union and TPS. She alleged the Union violated R.C. 4117.11(B)(1), (2), and (6)[1] because she was denied Steps One and Two of the disciplinary procedure; Article 17.02(C) of the CBA was violated; and the Union denied her request for

---

[1] On appeal, McClair challenges only the trial court's judgment relating to the violation of R.C. 4117.11(B)(6).

4.

arbitration.  McClair alleged TPS unfairly and inappropriately imposed a five-day suspension and letter of reprimand in violation of R.C. 4117.11(A)(1), (3), (5), (6), and (8) for the same three reasons.  She supplemented her charges with the affidavits of a fellow TPS school resource officer, Mark Gant, and a former TPS dispatcher, Venetia Tate, which were executed after the Union had denied the request to arbitrate.  McClair submitted the affidavits to establish that TPS was biased against her because she had opposed a Union member also acting as a supervisor and that she was being singled out for discipline for the same infractions committed by other officers who were not disciplined.

{¶ 9} The CBA disciplinary procedure is set forth in Article 17.00-17.02 and provides that "the following procedure shall be followed."  Article 17.01.  Furthermore, Article 17.02(A) provides:

Procedures outlined in this article will be followed and the disciplinary procedure under this article is not subject to a separate grievance.  If a party disputes a decision at any step of this procedure, the only recourse is an appeal to the next step under this procedure.

{¶ 10} Article 17.02(C) provides that:  "* * *.  The Superintendent or his/her designee shall render a decision within ten (10) work days of the conclusion of the hearing. * * *."  Article 17.02(D) provides that Step One requires that "[e]very attempt shall be made to resolve any infraction of rules and regulations in an informal way

between the employee and the employee's immediate supervisor." Article 17.02(E) Step Two requires that:

> [i]f an impasse is reached under [Step One], the employee's supervisor (or the individual preferring charges) shall reduce those charges to writing * * *. Those charges shall be brought within ten (10) work days of the occurrence of the alleged offense * * *. The department head shall review the charges and any defense of the employee and/or Union wishes to offer and shall endeavor to ascertain the truth. The department head will consult with the Personnel department * * *. A hearing shall be conducted within ten (10) work days of the receipt of the supervisor's recommendation. The department head shall make his/her recommendation to the Superintendent or his/her designee within five (5) work days after the hearing. This recommendation can be appealed within ten (10) work days.

{¶ 11} Gant attested generally that Thompson had not been representing the officers fairly in her position as supervisor and Union president, but he gave no specific examples. Furthermore, he attested that he was familiar with McClair's work and that her work was equal to or more acceptable than other resource officers; she has busier work locations; has assisted Gant many times; and she has a better track record than other officers regarding arriving at sporting events on time and leaving temporarily for personal necessity. Additionally, Gant attested that prior to McClair's discipline, no other officer was required to call in if they were going to be absent from their work site and that they

6.

often ran errands.  Generally, all the officers, including McClair, gauged their ability to take care of personal matters based on whether there are sufficient other officers present to oversee the event.  Finally, he attested that after McClair's discipline, all officers are required to call in changes to their location and show absences on their time cards.

{¶ 12} Venetia Tate, a TPS dispatcher for the prior 17 years who was familiar with the assignments and work duties of school resource officers, attested that over the last 17 years she had not seen officers disciplined or their wages docked for leaving their work site without calling or radioing the dispatcher to report a change in location or for arriving late to their assignments.  Furthermore, Tate observed that Weyandt supervised McClair far more closely than other officers by checking her location and comparing her overtime cards with the dispatcher logs.

### SERB Decision

{¶ 13} On June 30, 2016, SERB dismissed the charges against the Union for lack of probable cause to believe R.C. 4117.11(B)(1), (2), and (6) had been violated.  The SERB investigator considered that SERB held in *In re AFSCME, Local 2312*, SERB 89-029 (10-16-89) that R.C. 4117.11(B)(6) does not give public employees an absolute right to have their grievances taken to arbitration nor does it not restrict the discretion of the Union in the settlement of grievances.  Based on the evidence in this case, SERB determined, after considering the totality of the circumstances, that the Union did not act in an arbitrary or discriminatory manner or in bad faith in its handling of the discipline of McClair.  The Union reviewed the case with McClair, represented her at the hearing, and

7.

reviewed her case again regarding her requested arbitration before finding it lacked merit to arbitrate. Therefore, SERB found the Union did not violate R.C. 4117.11(B)(6). SERB also found McClair failed to provide sufficient evidence to support her allegations regarding the Union's violation of R.C. 4117.11(B)(1) and (2).

{¶ 14} SERB also dismissed the charges against TPS for lack of probable cause to believe R.C. 4117.11(A)(1), (3), (5), (6), and (8) had been violated. SERB determined McClair was harmed by the five-day unpaid suspension, but she did not establish a prima facie claim of discrimination and her discipline was the result of the alleged infractions, not antiunion animus. Therefore, SERB found the actions of TPS did not constitute a R.C. 4117.11(A)(3) violation. SERB held the allegations of contract violations did not constitute a R.C. 4117.11(A)(5) violation and had to be addressed through the contractual grievance-arbitration procedure. SERB determined that McClair had not submitted sufficient information or documentation to support her (A)(1), (6), or (8) allegations.

**Complaint for Writ of Mandamus**

{¶ 15} McClair asserted in the trial court proceedings that SERB unreasonably, arbitrarily, and unconscionably dismissed her unfair labor practices charges. In her brief in support, she argued SERB did not conduct the required analysis because the undisputed facts demonstrate the Union and TPS did not adhere to the CBA disciplinary process. She further argued that if SERB had conducted the required analysis, it could only have concluded there was probable cause to believe the Union did not fairly represent her when it expedited the disciplinary process, failed to pursue a grievance

8.

regarding the expedited disciplinary process and the violation of Article 17.02(C), and declined her request to arbitrate. She asserted that Article 17.01(A) states that the disciplinary process is mandatory and a remedy for the loss of an opportunity to appeal from the department head's recommendation to the "Step Three" hearing could only have been obtained through a grievance.

{¶ 16} She supported her allegation that the Union discriminated against her with the affidavit of Gant asserting she was singled out for discipline for infractions commonly committed by other officers because of her opposition to her supervisor also serving as president of the Union. She argued her request for arbitration was justified by the contract violations and the Union's discriminatory conduct, which was evidenced by its failure to interview either Gant or Tate before making the decision not to arbitrate.

{¶ 17} Finally, McClair asserted TPS committed an unfair labor practice by expediting the disciplinary procedures and by violating Article 17.02(C) of the CBA, which constituted an attempt to unilaterally modify the CBA, and by causing or attempting to cause the Union to commit an unfair labor practice by placing the Union president into a supervisor position, which led to her conflict of interest.

**Mandamus Standards**

{¶ 18} SERB must investigate charges of an unfair labor practice and, if it finds probable cause to believe a violation occurred, issue a complaint and conduct a hearing regarding the charge. R.C. 4117.12(B). R.C. Chapter 4117 does not provide for the discretionary decision of SERB to be reviewed by a court. However, because there is no

9.

adequate remedy at law, mandamus is an appropriate remedy to compel SERB to reinstate a dismissed charge and proceed to a hearing where the relator can show by plain, clear, and convincing evidence that: relator has "a clear legal right to the relief" requested and "SERB is under a clear legal duty to perform the requested act." *State ex rel. Professionals Guild of Ohio v. State Emp. Relations. Bd.*, 10th Dist. Franklin No. 08AP-417, 2009-Ohio-2155, ¶ 4. *See also State ex rel. Hall v. State Emp. Relations Bd.*, 122 Ohio St.3d 528, 2009-Ohio-3603, 912 N.E.2d 1120, ¶ 18, quoting *State ex rel. Stewart v. State Emp. Relations Bd.*, 108 Ohio St.3d 203, 2006-Ohio-661, 842 N.E.2d 505, ¶ 10.

{¶ 19} To obtain a writ, relator must show that SERB abused its discretion in making its probable cause determination during the investigation phase. *Hall*. An abuse of discretion is evidenced by an "unreasonable, arbitrary, or unconscionable attitude." *Id.* If conflicting evidence is shown regarding the charges, the court cannot substitute its judgment for SERB. *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 41. An abuse of discretion will not be found where conflicting evidence was presented, *Hall* at ¶ 19, or insufficient evidence was submitted to support the burden of proof. *State ex rel. Alben v. State Emp. Rels. Bd.*, 76 Ohio St.3d 133, 139, 666 N.E.2d 1119 (1996).

10.

## Trial Court's Judgment

{¶ 20} In its February 27, 2017 judgment, the trial court denied McClair's complaint for a writ of mandamus. Regarding the charges against the Union, the court found it was undisputed that "Step One and Two" of the disciplinary procedures were bypassed, but the process did not finalize or foreclose further review of McClair's discipline; McClair never objected to the expedited process; there was no evidence that Thompson's bifurcated roles affected the actions of the Union; and the denial of the request to arbitrate was not arbitrary, discriminatory, or made in bad faith and was justified by McClair's admission to the core charges. Furthermore, the court noted the affidavits of Gant and Tate were not executed until after the Union had already denied McClair's request for arbitration.

{¶ 21} As to the charges against TPS, the court found that the expedited disciplinary process did not translate to a refusal to bargain. Secondly, the court found that TPS did not violate R.C. 4117.11(A)(8) by placing Thompson in a supervisory position and initiating a disciplinary proceeding based on her accusations, because the court found the Union had not violated its duty of fair representation.

{¶ 22} Therefore, the trial court concluded McClair did not meet her burden to establish that SERB abused its discretion in finding that there was no probable cause to believe the Union or TPS committed an unfair labor practice and, therefore, she was not entitled to a writ of mandamus. McClair filed an appeal to this court.

11.

## Assignments of Error

{¶ 23} On appeal, McClair asserts the following assignments of error:

1.  The trial court abused its discretion when it upheld the dismissal by the State Employment Relations Board of McClair's unfair labor practice charge against her union.

2.  The trial court abused its discretion when it upheld the dismissal by the State Employment Relations Board of McClair's unfair labor practice charge against her employer.

## Appellate Standard of Review

{¶ 24} On appeal to this court, we consider whether the trial court abused its discretion in determining whether McClair established a clear legal right to an order compelling SERB to issue a complaint and a corresponding clear legal duty on the part of SERB to reinstate the unfair labor claim. *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, 30 N.E.3d 941, ¶ 22; *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.*, 66 Ohio St.3d 485, 492, 613 N.E.2d 605 (1993).

## I.  First Assignment of Error

### A.  Alleged Unfair Labor Practices of the Union

{¶ 25} In her first assignment error, McClair challenges the SERB finding that there was no probable cause to believe the Union violated R.C. 4117.11(B)(6), the duty of fair representation.

**1.) Union's Failure to File a Grievance Regarding the
Expedited Disciplinary Process**

{¶ 26} McClair asserted the Union committed an unfair labor practice through three actions: failure to enforce "Step One" and "Step Two" of the disciplinary process; failure to protect McClair's rights under Article 17.02(C) of the CBA because the TPS superintendent did not render a decision ten days after the hearing; and denial of McClair's request for arbitration. In her brief in support of her complaint for a writ of mandamus, however, McClair argued the Union committed an unfair labor practice when it did not file a grievance regarding the expedited disciplinary process. Despite the fact that this issue was never before SERB, the trial court considered this issue and held that McClair never requested that the Union file a grievance regarding the expedited disciplinary process. We agree.

{¶ 27} Where an employer allegedly violates a contract-based right, the employee must pursue a remedy through the grievance-arbitration process. *Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir.2016). Where the union wrongfully fails to pursue the grievance to arbitration, an employee can assert the union violated its statutory duty of fair representation, R.C. 4117.11(B)(6); *Kobold*; *In re Wheeland*, 10th Dist. Franklin No. 94APE10-1424, 1995 Ohio App. LEXIS 2369, *5, 18 (June 6, 1995); *Xiong v. Fischer,* 787 F.3d 389, 395 (7th Cir.2015).

{¶ 28} The CBA before us provides that an employee, who may be represented by the Union, initiates the grievance process and "shall present the grievance orally to

his/her immediate supervisor." In this case, the SERB investigator found in its May 24, 2016 memorandum that there was no evidence that McClair ever objected to the skipping of "Step One" or, after the discipline was concluded, requested that the Union file a grievance on her behalf. McClair requested arbitration of her suspension as provided in "Step Four" of the disciplinary process. In her arbitration brief submitted to the Union, she reiterated only justifications for her conduct which resulted in the infractions. She never asserted that TPS violated her contractual rights regarding "Step One" and "Step Two." Therefore, we conclude that the trial court did not abuse its discretion in finding that the Union had not violated its statutory duty of fair representation by failing to pursue this grievance.

### 2.) Union's Agreement to Expedite the Disciplinary Process

{¶ 29} Second, we address the issue of whether the Union committed an unfair labor practice by agreeing to the expedited disciplinary process in violation of McClair's contract rights under the CBA.

{¶ 30} Courts must defer to the reasonable interpretation of R.C. Chapter 4117 by SERB, *Hall*, 122 Ohio St.3d 528, 2009-Ohio-3603, 912 N.E.2d 1120 at ¶ 20, quoting *State ex rel. Grady v. State Emp. Relations Bd.,* 78 Ohio St.3d 181, 183-184, 677 N.E.2d 343 (1997), including its definition of and standard for determining whether a union has violated its duty of fair representation. *Wheeland*, 10th Dist. Franklin No. 94APE10-1424, 1995 Ohio App. LEXIS 2369, *11 (June 6, 1995), quoting *In re AFSCME, Local 2312*, SERB 89-029 (Oct. 16, 1989). The Ohio public employment law is based on

14.

federal statutes which empower the National Labor Relations Board; therefore, federal cases are instructive, but not controlling. *State Emp. Relations Bd. v. Miami Univ.*, 71 Ohio St.3d 351, 353, 643 N.E.2d 1113 (1994).

{¶ 31} A union breaches its duty of fair representation when it acts arbitrarily. *Hall* at ¶ 23, citing *Vencl v. Internatl. Union of Operating Engineers, Local 18*, 137 F.3d 420, 426 (6th Cir.1998). This standard was adopted by SERB. *Id.* at ¶ 25, citing *In re OCSEA/AFSCME Local 11*, SERB No. 98-010 (July 22, 1998), *53-58. SERB considers the reason for the union's action or inaction and whether the state reason is rational, in light of the union's "approaches to bargaining and contract enforcement." *Wheeland* at *12, quoting *In re AFSCME, Local 2312,* SERB 89-029 (10-16-89), *3-203-3-204.

{¶ 32} Even in the absence of a rational reason for the union's action or inaction, SERB has held it will not assume arbitrariness. *Hall* at ¶ 22. Where there is "no apparent factors that show legitimate reason for a union's approach to an issue," SERB "look[s] to evidence of improper motive: bad faith or discriminatory intent." *Id.*, quoting *Wheeland* at *12-13, and *AFSCME, Local 2312*. Absent evidence of either of these motives, SERB will find a violation of a union's duty of fair representation only when "the conduct is so egregious as to be beyond the bounds of honest mistake or misjudgment." *Id. See also Air Line Pilots Assn. v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991); *Haraszthy v. Office & Professional Emps. Internatl. Union, Local 17*, 74 Ohio App.3d 297, 306, 598 N.E.2d 1210 (8th Dist.1991). The determination of probable cause is a

15.

fact-based issue. *State ex rel. Portage Lakes Edn. Assn. v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 39.

{¶ 33} Furthermore, SERB has adopted the view that "certain basic and required steps" must be taken by a union to fulfill its duty of fair representation. *Hall* at ¶ 26-27, quoting *OCSEA/AFSCME Local 11*. "[A]bsent justification or excuse, * * * [*id*. at ¶ 24, quoting *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211 (6th Cir.1981),] the failure to take a basic and required step" (such as "filing a grievance, processing a grievance, deciding whether to take a grievance to arbitration, participating in labor-management committee meetings, negotiating with an employer regarding wages, hours, terms and conditions of employment, and conducting a contract ratification meeting," *id*. at ¶ 26) gives rise to a "rebuttable presumption of arbitrariness." *Id*., quoting *OCSEA/AFSCME Local 11*. Therefore, SERB considers all the circumstances, the severity of the mistake or misjudgment, the consequences of the action or inaction by the union, and the reasons for the actions/inactions. *Id*. at 26-27.

{¶ 34} In the mandamus action, SERB contended that: 1) the CBA did not mandate that Step One be followed because it states that "[e]very attempt shall made to resolve the infraction * * * in an informal way" Article 17.02(D); 2) Step One was bypassed to avoid the appearance of any conflict of interest caused by Thompson acting as a supervisor and Union president; 3) the parties usually proceed to Step Three when the resulting discipline may be a more serious suspension, demotion, or termination; 4) the Union had no recourse under the CBA if the employer violated its duties under

16.

Step Two, except appealing to the next step; and 5) McClair has not shown prejudice from the failure to follow Step Two.

{¶ 35} The trial court found it was undisputed that Step One and Two of the disciplinary process were not completed. However, the trial court accepted SERB's argument that the Union had the discretion to agree to expedite disciplinary process, especially where McClair did not object. Furthermore, the trial court found that there was no evidence of discrimination in this case.

{¶ 36} Where an employer allegedly violates a contract-based right, the union must pursue a remedy through the grievance-arbitration process. *Kobold*, 832 F.3d at 1034. However, in the case before us, the Union agreed to the expedited disciplinary procedure, and McClair asserts an unfair labor practice based upon the Union's violation of her contractual rights regarding the expedited disciplinary process.

{¶ 37} First, we find the trial court erred by finding that McClair's failure to demand her rights under the contract justified the Union's disregard of those rights. The trial court's reliance on *Dist. 1199, Health Care & Social Servs. Union v. State Emp. Relations Bd.*, 10th Dist. Franklin No. 02AP-391, 2003-Ohio-3436, is misplaced. In the *Dist. 1199* case, the appellate court found the union had not committed an unfair labor practice when an employee was excluded from a mediated grievance settlement because: 1) the union had unsuccessfully attempted to include the omitted employee and 2) it was reasonable not to arbitrate the grievance further to challenge the employee's exclusion, which would have jeopardized the settlement for the sole benefit an employee who had

17.

not requested the union take the matter to the next level and when a positive outcome was unlikely. *Id.* at ¶ 48. This holding is not relevant to the issue of whether an employee must assert her right to the full disciplinary process required by a CBA.

{¶ 38} Perhaps, a union's decision to expedite a disciplinary procedure required by the CBA could be justified if the employee explicitly agreed to the modified disciplinary procedure. Without the employee's consent, however, we find the Union's action of bypassing the disciplinary procedures for which the Union bargained is irrational.

{¶ 39} Where a CBA requires a specific process, the union must enforce that process. *Rupcich v. UFCW Internatl. Union, Local 881*, 833 F.3d 847, 855 (7th Cir.2016). In *Rupcich*, the federal court held that a union cannot ignore the plain language of the CBA disciplinary process without violating the employee's contractual rights under the CBA. *Id.* The court found such action irrational and rejected the union's argument that it had the discretion to deal with grievance matters in a manner contrary to the plain language of the CBA, which concerned fundamental rights and constituted a modification of the CBA. *Id.* at 855-856. Some CBAs provide for alternative processes. *Snow v. Util. Workers Union, Local 223*, E.D.Mich. No. 09-CV-10623, 2010 U.S. Dist. LEXIS 130119, *9 (Sept. 29, 2010). In *Snow*, the court found the union did not violate its duty of fair representation when it bypassed the four-step grievance process because the CBA permitted the union "to file a suspension or discharge-related grievance directly with the President of the Company and bypass the four-step process [of the CBA]." *Id.* The CBA before us does not.

18.

**{¶ 40}** Even where the union violates the terms of the CBA and bypasses the disciplinary procedure set forth in the CBA, the *Rupcich* court also required that the union's actions resulted in prejudice to the employee's case. *Id.* at 854, 858. *See also State ex rel. Fuller v. State Emp. Relations Bd.,* 193 Ohio App.3d 272, 2011-Ohio-1599, 951 N.E.2d 823, ¶ 28 (10th Dist.) (an unfair labor practice was committed by a union which negligently failed to take a basic and required step by failing to timely request arbitration, without justification or excuse, which resulted in the extinguishment of the employee's right of action); *Xiong*, 787 F.3d at 395 (an expedited grievance process was not a violation of the duty of fair representation because the first two steps would not have altered the outcome); *Bakos v. Am. Airlines, Inc., E.D.Pa. No. 17-402*, 2017 U.S. Dist. LEXIS 98671, *24 (June 26, 2017), quoting *Rupcich* at 854 (regarding claims of arbitrary, discriminatory, or bad faith negotiations, actual harm must be shown; i.e., that "the outcome would probably have been different but for the union's activities"); *Crane v. Transport Workers Union of Greater New York, Local 100*, S.D.N.Y. No. 07 Civ. 750 (RMB), 2008 U.S. Dist. LEXIS 52702, *6 (July 7, 2008) (there was no evidence showing that the union's discretionary decision not to proceed to arbitration with a meritless grievance was "'arbitrary, discriminatory, or in bad faith' or 'seriously undermined the arbitral process'" even though the employee alleged the union bypassed steps in the grievance process).

**{¶ 41}** In the case before us, the CBA required a four-step disciplinary process. While we agree with McClair that the trial court erred by not finding the Union acted

19.

irrationally by failing to protect her contractual rights, we agree with SERB that the consequences of expediting the disciplinary process did not alter the ultimate result of the disciplinary process. Unlike the *Rupcich* case, McClair admitted to the infractions and, therefore, it is not probable to believe that expediting the procedure altered the final outcome. Even if we consider the Gant and Tate affidavits, this evidence only establishes that in the past other officers had committed similar infractions without discipline and all officers are now subject to the same strict construction of the rules. We can infer from that evidence that Thompson would have been aware of the allegedly widespread infractions when she decided to discipline McClair and it is unlikely she would have resolved McClair's infractions in a different manner.

{¶ 42} We also agree with McClair that the loss of the opportunity to appeal the hearing officer's recommendation prevented McClair from introducing additional evidence to support her case. She does not, however, assert what additional evidence she would have submitted other than the Gant and Tate affidavits. In light of the fact that she admitted to the circumstances of the infractions, there is no basis for finding that outcome of her discipline would have been different.

{¶ 43} The trial court also rejected McClair's argument that bias must be presumed because Thompson acted as the accuser and was the Union president. We agree. McClair carried the burden to demonstrate that Thompson's dual roles denied her fair representation. *State ex rel. Leigh v. State Emp. Relations Bd.*, 76 Ohio St.3d 143, 146, 666 N.E.2d 1128 (1996). Gant attested generally that there had been situations

20.

where grievances had not been filed by the Union and Thompson had not represented the officers fairly. But, he did not provide any specific, concrete examples to support his belief. Furthermore, McClair did not produce any actual evidence of bias in her case to support her allegations beyond the fact that she was being disciplined for conduct other officers had committed and the Union agreed to the expedited disciplinary process. There was no evidence that McClair's disciplinary action was motivated by any bias against her. While McClair believed Thompson was retaliating against McClair for opposing Thompson's dual position, McClair produced no evidence to support her belief. McClair admitted to committing the infractions and Gant attested that all officers are now being held to the same standard.

{¶ 44} McClair argues on appeal that the Union breached of its duty of fair representation by failing to present favorable evidence during the grievance process, which affected the ultimate decision of the hearing officer. She contends it is undisputed in this case that the Union did not present documents appellant provided to verify her whereabouts on the day in question and to evidence the differential treatment of appellant. It was noted in the SERB investigator's memorandum that the Union asserted McClair presented this evidence at the last minute, and she agreed with the Union representative not to submit the evidence to the hearing officer because she had admitted the infractions. While we agree the Union's assertions were not proper "evidence," McClair also did not present any evidence to support her factual assertions and she

21.

carried the burden to demonstrate unfair representation. Her summary of the circumstances of her absences did not establish a basis for dismissal of the charges.

### 3.) Union's Decision Not to Arbitrate the Grievance the Suspension

{¶ 45} Finally, we consider whether the trial court abused its discretion when it concluded that the Union did not commit an unfair labor practice by declining McClair's request to submit her suspension to arbitration as provided for in "Step Four" of the disciplinary process

{¶ 46} In *AFSCME*, *Local 2312*, SERB found that the union's duty of fair representation encompasses the duty to balance the needs of its membership in terms of bargaining, grievances, and contract administration. *Wheeland*, 10th Dist. Franklin No. 94APE-10-1424, 1995 Ohio App. LEXIS 2369, *11-12, quoting *AFSCME*, Local 2312, SERB 89-029, *3-203-3-204. Therefore, the union must be given the necessary flexibility and deference in the exercise of its representation duties to protect the interests of the unit as a whole, *id.*, and an individual employee does not have an absolute right to have a grievance taken to arbitration. *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Unions are given wide discretion in deciding whether or not to pursue a grievance through arbitration and the employee is protected from arbitrary, discriminatory, or bad faith conduct through the requirement of fair representation. *Xiong*, 787 F.3d at 395. Therefore, a union does not violate its duty to provide fair representation when, in good faith, it declines to arbitrate a grievance which lacks merit.

22.

*Vaca at* 192-193; *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975).

{¶ 47} We hold the trial court did not abuse its discretion when it found McClair had not met her burden to show SERB abused its discretion by finding there was no probable cause to believe the Union's denial of her request to arbitrate her suspension was a breach of the Union's duty of fair representation. At the time the Union made its determination, the evidence supported its decision not to arbitrate the suspension because McClair had admitted the infractions and the Union had successfully argued to reduce her discipline to a 5-day suspension. There was no additional information in McClair's arbitration brief to justify filing a grievance.

{¶ 48} Even if we considered the two affidavits submitted to SERB in its investigation of the unfair labor practice charges, they do not support a finding of probable cause to believe the Union breached its duty of fair representation. The fact that other officers had committed similar infractions in the past and not been disciplined, does not prevent TPS from initiating enforcement of the work hours beginning with McClair. Gant attested that officers are now required to call in changes to their location and show absences on their time cards.

{¶ 49} Therefore, we conclude that the trial court did not abuse its discretion by finding that McClair did not meet her burden to establish a right to a writ of mandamus. The record supports the SERB decision that there was probable cause to believe the

23.

Union did not violate its duty of fair representation. McClair's first assignment of error is not well-taken.

## II. Second Assignment of Error

{¶ 50} In her second assignment of error, McClair argues that the trial court erred when it upheld the dismissal by SERB of McClair's unfair labor practice charge against TPS. SERB found that no probable cause existed to believe TPS violated R.C. 4117.11(A)(1), (3), (5), (6), and (8) because:

> McClair failed to establish a prima facie case of discrimination * * * [or] anti-union animus. Based on the totality of the circumstances, the District's actions do not rise to the level of an (A)(3) violation of the statute.
>
> Also, the allegations contained in the charge are contractual and do not encompass any statutory violation. The proper venue for resolution of those allegations would have been through the parties' contractual grievance-arbitration procedure. Therefore, the District's actions to not amount to an (A)(5) violation of the statute.
>
> Ms. McClair did not provide sufficient information or document to support the (A)(1), (6), and (8) allegations.

24.

**{¶ 51}** In its mandamus action, McClair first argued TPS violated R.C. 4117.11(A)(1), (3), (5), (6) and (7)[2]. The trial court found her arguments not well-taken and held that SERB did not abuse its discretion in finding there was no probable cause to believe TPS committed an unfair labor practice.

**{¶ 52}** On appeal, McClair argues only that TPS committed an unfair labor practice when it unilaterally modified the CBA by expediting McClair's disciplinary process. McClair does not indicate which statutory section was violated by this action, but we assume she is asserting TPS violated R.C. 4117.11(A)(1), (3), (5) and (6). Second, McClair argues TPS committed an unfair labor practice under R.C. 4117.11(A)(8) when it caused the Union to commit an unfair labor practice under R.C. 4117.11(B) because it assigned Thompson as McClair's supervisor when Thompson was also the Union president.

**{¶ 53}** R.C. 4117.11(A) provides it is an unfair labor practice for an employer to:

(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;

\* \* \*.

---

[2] A violation of R.C. 4117.11(A)(7) was not asserted in the original charge and will not be considered on appeal.

25.

(3) Discriminate in regard to hire or tenure of employment or any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117. of the Revised Code.  Nothing precludes any employer from making and enforcing an agreement pursuant to division (C) of section 4117.09 of the Revised Code.

* * *.

(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code;

* * *.

(6) Establish a pattern or practice of repeated failures to timely process grievances and requests for arbitration of grievances;

* * *.

(8) Cause or attempt to cause an employee organization, its agents, or representatives to violate division (B) of this section.

{¶ 54} First, we find there was no evidence of a violation of R.C. 4117.11(A)(1), because McClair was not denied union representation.  Second, there was no evidence of a R.C. 4117.11(A)(3) violation because there was no evidence of an antiunion motivation for the TPS/Union "agreement" to expedite the disciplinary process.

{¶ 55} Third, there was also no evidence of a violation of R.C. 4117.11(A)(5) because McClair's allegation is not that TPS failed to collectively bargain the disciplinary

process or that TPS unilaterally modified the CBA disciplinary process. *See State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, 789 N.E.2d 203, ¶ 18 (the state failed to bargain about the decision to close a prison when the CBA provided the union would be given advance notice and an opportunity to discuss the closure); *Toledo Police Command Officers' Assn. v. State Emp. Relations Bd.*, 6th Dist. Lucas No. L-13-1074, 2014-Ohio-4341, ¶ 21 (city did not make a reasonable effort to bargain regarding pension contributions before unilaterally modifying the CBA). Rather, the allegation in this case is that TPS violated the CBA disciplinary process, with the cooperation of the Union, for which the exclusive remedy is the grievance-arbitration process. *Wilkinson* at ¶ 20.

{¶ 56} Fourth, we also find there was no evidence of a violation of R.C. 4117.11(A)(6). While the Union admitted that it had agreed with TPS to expedite discipline in cases involving suspension or termination, this practice did not involve "failures to timely process grievances and requests for arbitration of grievances." The focus of this provision of the statute is the prohibition of a pattern of delaying the resolution of grievances, not expediting the disciplinary process. Therefore, this statute does not apply to the facts of this case.

{¶ 57} Finally, we find there is no evidence of a violation of R.C. 4117.11(A)(8). Because we have already upheld the trial court's finding that SERB did not abuse its discretion in finding there was no probable cause to believe the Union committed an unfair labor practice, there can be no basis for a violation of R.C. 4117.11(A)(8) by TPS.

Therefore, we find McClair's second assignment of error not well-taken.

27.

**{¶ 58}** Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE